**TOYOTA OF BERKELEY, a corporation, Plaintiff/Appellee,**

v.

**AUTOMOBILE SALESMEN'S UNION, LOCAL 1095, UNITED FOOD AND COMMERCIAL WORKERS UNION, Defendant/Appellant.**

No. 87–1555.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1987.

Decided Dec. 14, 1987.

John R. Bobay, San Anselmo, Cal., for plaintiff/appellee.

David A. Rosenfeld, San Francisco, Cal., for defendant/appellant.

Before HUG, BOOCHEVER and BRUNETTI, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Automobile Salesmen's Union, Local 1095, United Food and Commercial Workers Union (Union) appeals the district court order vacating an arbitration award on the grievance of a discharged employee. The district court held that the ex parte arbitration hearing was improper and the arbitrator was biased. We reverse.

At issue is the right to proceed ex parte with an arbitration after both parties have agreed to arbitration and the time and place of arbitration. We also must decide the proper standard for determining bias of an arbitrator and whether the district court erred in deciding that there was bias because the arbitrator proceeded ex parte, was named a defendant in a civil suit filed by a party to the arbitration seeking injunctive relief from the arbitration, and later sought sanctions against the attorney for the plaintiff in that suit.

## FACTS

Toyota of Berkeley (Toyota) and the Union were parties to a collective bargaining agreement. Section 4 of the agreement covers the discharge of employees. Section 17 of the agreement calls for the arbitration of disputes arising from the interpretation of its specific provisions. The section requires that grievances be submitted in writing within seven days of the alleged violation of the agreement, and that demands for arbitration be submitted within 30 days.

Toyota discharged Edward Fontes, an automobile salesman, on a date which is unclear. Toyota alleges that it fired Fontes on December 2, 1982. On February 15, 1983, the Union submitted a grievance to Toyota. Toyota replied that it had insufficient information about the grievance, and asked for particulars without waiving any rights as to procedural defects, includ-

ing the timeliness of the grievance. Four months later, in a letter of June 23, 1983, the Union responded to Toyota's "recent" position that the Union had failed to demand arbitration timely with a claim that Toyota had "always been on notice that the Union intended to proceed to arbitration." Not until August 1, 1984, did the Union submit its formal demand for arbitration.

More than six months later, Toyota wrote to the arbitrator, Joe Henderson, confirming an April 15, 1985 date for the hearing on Fontes' discharge. Just before the scheduled hearing, the parties agreed to postpone the hearing because of another pending matter involving timeliness of arbitration demands, which was resolved by a memorandum decision of this court upholding arbitrability dated March 26, 1986.[1]

On June 9, 1986, Toyota wrote Henderson that it would not participate in the arbitration because of the Union's failure to comply with procedural requirements (i.e., the failure to file a grievance and demand arbitration timely). The Union's response was to write Henderson (with a copy to Toyota) requesting him to set a date and to proceed, whether or not Toyota participated. Henderson scheduled the arbitration for August 6, and Toyota responded on July 3 that the dispute over timeliness was not arbitrable and it would not participate. On July 28, Henderson rescheduled the hearing to 10:00 on September 3, to allow Toyota to seek a court order prohibiting arbitration.

On September 2, Toyota told Henderson that it planned to seek a temporary restraining order in district court on September 3, the day of the hearing. Henderson waited until 10:45 a.m. on September 3, and then began the hearing without Toyota. A half-hour later, the hearing was over when a call from Toyota informed Henderson and the Union that Toyota had obtained a restraining order. Toyota's complaint named Henderson as a codefendant, and alleged

that he conspired with the Union to violate the collective bargaining agreement by holding an ex parte hearing to determine arbitrability. It asked that he be enjoined from arbitrating the dispute, rendering an award, or demanding a cancellation fee.

Henderson filed an opposition to Toyota's motion for injunctive relief, and Toyota dismissed the action as to Henderson on September 12. On September 26, the court dissolved the temporary restraining order, denied the application for a preliminary injunction, and set the case for hearing on cross-motions for summary judgment.

Henderson's decision is dated September 23, but he refused to issue it pending the payment of his arbitrator's fees by both parties and Toyota's payment of his attorney fees and costs incurred in the civil injunction suit. On September 29, the court ordered him to issue the decision. Henderson filed his decision in court on October 7. Henderson found that Fontes was fired on February 9, 1983 and that his grievance was timely. Henderson awarded Fontes back pay and benefits. The decision further stated that the issue of timeliness was arbitrable and the ex parte hearing was valid.

On November 21, Henderson filed a motion in the district court for sanctions against Toyota's attorney. Also pending in the district court were the parties' motions for summary judgment. Pursuant to stipulation, the motions were heard as cross-motions to vacate and confirm the award. After a hearing, the district court vacated the arbitration award on the grounds that the ex parte hearing was improper and the award was the result of Henderson's bias. Henderson's motion for Rule 11 sanctions was denied on the same day.

## DISCUSSION

### (1) *The ex parte arbitration hearing*

The Union argues that the district court erred in vacating the arbitration award on

---

1. *Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095, United Food and Commercial Workers Union,* 787 F.2d 598 (9th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 1602, 94 L.Ed.2d 789 (1987). 9th Cir.R. 36–3 specifies in part that a disposition of this court which is not designated for publication "shall not be cited to or by this

court ... except when relevant under the doctrine[ ] of ... *res judicata.*" (emphasis added). Here, the memorandum decision resolved the issue of the arbitrability of timeliness as between Toyota and the Union, and was therefore res judicata in the district court.

the grounds that the September 3 arbitration hearing was improper because it was held ex parte, without Toyota's participation. We review this question of law de novo. *United States v. McConney*, 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

 Toyota's purported reason for refusing to attend the hearing was that the timeliness of Fontes' grievance and the demand for arbitration was not arbitrable. While it is a court's duty to decide whether disputes over substantive interpretations of a labor agreement are to be resolved through arbitration, *AT & T Technologies v. Communications Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 1420, 89 L.Ed.2d 648 (1986), procedural questions related to substantive issues that are arbitrable under the agreement are for the arbitrator to decide in the absence of a contrary provision. *Local 370, Int'l Union of Operating Eng'rs v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir.1986) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964)). This circuit has held that timeliness is a procedural question subject to arbitration. *Retail Delivery Drivers Local 588 v. Servomation Corp.*, 717 F.2d 475, 478 (9th Cir.1983). The district court judge correctly concluded that the dispute over the timeliness of the Fontes grievance was arbitrable, and Toyota does not raise this issue on appeal. The issue is not whether Henderson had jurisdiction over the dispute, but rather whether he could proceed without Toyota present.

 This court has yet to rule on the issues presented by ex parte arbitration, but the general trend of authority is clear. Under a collective bargaining agreement specifically providing for designation of an arbitrator without the participation of both parties, an arbitrator may issue an enforceable default award when one party fails to attend the hearing. *Corallo v. Merrick Central Carburetor*, 733 F.2d 248, 251 n. 1 (2d Cir.1984); F. Elkouri & E. Elkouri, *How Arbitration Works* 247 (4th ed. 1985). If an agreement provides that the parties shall jointly select an arbitrator, however, a court may refuse to enforce an award made following an ex parte hearing before an arbitrator selected without the defaulting party's cooperation, on the grounds that the party not in default should have sued to compel arbitration. *Sam Kane Packing Co. v. Amalgamated Meat Cutters*, 477 F.2d 1128, 1135–36 (5th Cir.), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed.2d 237 (1973); Elkouri & Elkouri at 247–48. If the parties did cooperate in selecting an arbitrator as specified by the agreement, and the defaulting party has adequate notice of the hearing, the failure to attend does not nullify the award. *See Sam Kane*, 477 F.2d at 1136 ("we would be faced with a strong case for the award"); American Arbitration Association Voluntary Labor Arbitration Rule 27, 3 Lab.Rel. Rep. (BNA) (88 Lab.Arb.) 3 (June 17, 1987) ("Unless the law provides to the contrary, the arbitration may proceed in the absence of any party, who, after due notice, fails to be present or fails to obtain an adjournment.").

The district court held that the ex parte hearing was improper because the arbitration clause in the collective bargaining agreement was not "self-executing," that is, did not provide that either party could demand arbitration and select an arbitrator without the other's cooperation. Section 17 of the agreement provides that unresolved grievances are to be "referred to an impartial arbitrator," and outlines a procedure for selecting an arbitrator should the parties fail to agree. The Union and Toyota did agree on an arbitrator; Toyota confirmed the initial date and location of the hearing, agreed to a postponement, and otherwise showed every intention to participate over a period of nearly three years. When it reversed its position and declared it would not arbitrate, Henderson rescheduled the hearing date to give Toyota time to seek a court order restraining arbitration. Toyota delayed until the morning of the hearing, so that the arbitration was completed before Henderson received notice of the temporary restraining order.

Section V(C) of the Code of Professional Responsibility for Arbitrators of Labor/Management Disputes requires that the arbitrator consider the relevant legal and contractual circumstances and ensure adequate notice before proceeding ex parte. Code of Professional Conduct § V(C), 3 Lab.Rel.Rep. (BNA) (88 Lab.Arb.) 208 (June 17, 1987). Henderson quotes from the Code in his decision and clearly attempted to avoid proceeding without Toyota. Toyota willfully chose not to attend. Under these circumstances, the ex parte hearing did not violate due process. *See Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 729 (5th Cir.1987). "To allow a party to avoid the effect of a grievance proceeding by merely refusing to participate would destroy any incentive to peacefully negotiate labor disputes." *Teamsters Freight Employees Local 480 v. Bowling Green Express, Inc.*, 707 F.2d 254, 258 (6th Cir.1983).

■ Nor was the Union required to seek a court order requiring arbitration. Where, as here, one party withdraws after selection of an arbitrator and the scheduling of a hearing, the burden of going into court should rest on the party contesting the right to arbitrate under the contract. *See Amalgamated Meat Cutters No. 385 v. Penobscot Poultry Co.*, 200 F.Supp. 879, 882–83 (N.D.Me.1961) (listing authority that party seeking arbitration must get court order only when agreement provides arbitration may not proceed without one).

## (2) *The bias of the arbitrator*

### a) *The legal standard for "evident partiality"*

■ The Union further argues that the district court erred in vacating the arbitrator's award on the ground that the arbitrator was biased. The district court held that "arbitrators are held to the same high standards of impartiality as judges," and found Henderson was biased because he had been named as a party to Toyota's suit against

the Union and because he filed for sanctions against Toyota's attorney.

The district court's adoption of a standard of impartiality for arbitrators is a question of law which we review de novo. *McConney*, 728 F.2d at 1202–04.

The Federal Arbitration Act at 9 U.S.C. § 10(b) (1982) provides that a court may vacate an arbitrator's award "[w]here there was evident partiality ... in the arbitrator[]...." In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), a plurality of the Supreme Court construed section 10 to require that arbitrators meet the ethical standards of federal judges and avoid "even the appearance of bias." *Id.* 393 U.S. at 148–50, 89 S.Ct. at 339–40.[2] Courts of appeals ruling on the issue have adopted the reasoning of Justice White's concurrence that arbitrators, who are often effective because of their connections to the marketplace, should not be disqualified automatically by a business relationship with the parties if it is fully disclosed or trivial. *Id.* at 150, 89 S.Ct. at 340. In *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745–46 (9th Cir.1985), this circuit held that the appearance of impropriety, standing alone, is insufficient to establish bias, and that the burden of proving specific facts indicating improper motives rests on the party challenging the arbitration award. *See also Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83–84 (2d Cir.1984) (a less stringent standard than for federal judges, finding evident partiality where a reasonable person would have to conclude that the arbitrator was partial); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681–82 (7th Cir.) ("circumstances must be powerfully suggestive of bias"), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983); *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1150 (10th Cir.) (evidence of impropriety must be direct, definite, and capable of demonstration), *cert. denied*,

---

**2.** Title 28 U.S.C. § 455(a) (1982) provides: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982).

■ The district court applied too stringent a standard. Before a court can vacate an arbitration award because of "evident partiality" on the part of the arbitrator, the party alleging bias must establish facts that create "a reasonable impression of partiality." *Sheet Metal Workers*, 756 F.2d at 745.

b) *Henderson's bias*

■ Assuming application of the proper legal standard, we review the district court's factual finding of bias under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *Hy Chan Banh v. United States*, 814 F.2d 1358, 1361 (9th Cir.1987). As we have indicated, the legal standard applied by the district court subjected Henderson's behavior to a more exacting scrutiny than necessary. Under the proper standard, a conclusion that the award must be vacated because of Henderson's bias would be clearly erroneous.

■ Most of the disputes concerning an arbitrator's alleged partiality which have found their way into courts of appeal concern possible conflicts of interest existing before the arbitration. Such situations include an arbitrator's financial interest in the outcome of the arbitration, *Sheet Metal Workers*, 756 F.2d at 746, an arbitrator's ruling on a grievance that directly concerned his own lucrative employment for a considerable period of time, *Pitta v. Hotel Ass'n of New York*, 806 F.2d 419, 423–24 (2d Cir.1986), a family relationship that made the arbitrator's impartiality suspect, *Morelite Constr.*, 748 F.2d at 85, the arbitrator's former employment by one of the parties, *Merit Ins.*, 714 F.2d at 677, and the arbitrator's employment by a firm represented by one of the parties' law firms, *Ormsbee Dev.*, 668 F.2d at 1149. In many cases, it was the arbitrator's failure to disclose the financial or personal relationship as much as the actual potential for conflict

that fueled the claim of bias. *Sheet Metal Workers*, 756 F.2d at 746; *Merit Ins.*, 714 F.2d at 678; *Ormsbee Dev.*, 668 F.2d at 1149.

■ Toyota's grounds for alleging that Henderson was biased are quite different. Toyota does not claim that Henderson had any preexisting relationship with the Union, financial or otherwise. Nor does it assert that Henderson failed to disclose or concealed any conflict of interest. Instead, Toyota points to Henderson's status as a party to Toyota's suit for injunctive relief and to his filing against Toyota's counsel to recover a "personal debt" (Fed.R.Civ.P. 11 fees and sanctions) as evidence that Henderson was not impartial.

Toyota filed its lawsuit naming Henderson as a party in district court on the morning of September 3, 1986, at 9:53 a.m., seven minutes before the arbitration was scheduled to begin. The court issued the temporary restraining order shortly thereafter. While Henderson knew that Toyota planned to seek a temporary restraining order and waited for forty-five minutes before starting the hearing, he did not learn of the issuance of the order until after the hearing was over.[3] Toyota's complaint alleged that Henderson conspired with the Union to determine the arbitrability of the dispute and to hold the ex parte arbitration hearing.

The mere naming of Henderson as a defendant in a lawsuit to enjoin the arbitration does not create even an appearance of bias in his conduct of the hearing. He did not know the specific allegations until he was served with a copy of the complaint on the afternoon following the hearing. It would be clearly erroneous to rely on Henderson's party status to establish a reasonable impression of bias in his conduct of the September 3 hearing.

The more serious allegation is that Henderson was biased while he prepared his decision. Toyota contends that

---

3. A temporary restraining order or preliminary injunction is binding on a party when he or she "receive[s] actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d);

*United States v. Baker*, 641 F.2d 1311, 1314–15 (9th Cir.1981). Toyota does not claim that Henderson was bound by the order to halt the arbitration hearing.

Henderson's filing for sanctions under Fed. R.Civ.P. 11 indicates bias.

Henderson filed for sanctions against Toyota's attorney on November 21, two months after he prepared his decision. Four days after the hearing, in a letter urging Toyota to drop Henderson as a party, his attorney wrote Toyota that Henderson planned to seek sanctions. Henderson's grounds for filing for sanctions were that Toyota's attorney had failed to read the pleadings, and that the action was frivolous and filed for the purpose of harassing Henderson. Toyota's attorney admitted that the inclusion of the allegations of conspiracy in the complaint was a word processing error, and the district court refused even to address the issue of conspiracy in the discussion of the arbitrator's bias.

We are concerned with the effect of the allegations, if any, on Henderson's professional judgment as evidenced by his actions following the hearing and prior to the filing of his opinion. Henderson's behavior in no way creates an appearance of partiality. He prepared his decision as he had contracted to do. His refusal to issue it until his fees were paid was entirely reasonable. His further request that Toyota pay his attorney fees and costs in the district court case was also a reasonable response as a named defendant in Toyota's complaint. The district court denied his request and issued an order compelling him to issue his opinion. That order was issued after the preparation of his decision and could in no way have influenced it.

Henderson was understandably eager to defend himself against Toyota's accusations; his professional reputation was at stake. He asked for sanctions not against Toyota but against Toyota's attorney, thus providing even less support for a finding that he was biased against Toyota itself. The district court judge appears to have accepted Henderson's actions in filing for sanctions against Toyota's attorney as a natural reaction to the suit against him. Henderson could hardly be expected to do nothing.

Every one of Henderson's actions which Toyota recites as evidence of bias was in reasonable response to Toyota's own actions in filing suit and alleging conspiracy between Henderson and the Union. Toyota, in effect, created any appearance of bias. If there were any indication of reasonable grounds for alleging conspiracy between Henderson and the Union, we would be confronted with a different question; but Toyota does not contend that there was any substance to the conspiracy allegation. It would be an odd result to hold that a party to arbitration can manufacture bias by naming the arbitrator in a suit to enjoin the arbitration. It would be equally inappropriate to find bias in any reasonable action taken in defense of that suit by the arbitrator. Such a result would allow a party who is reluctant to arbitrate a foolproof way to disqualify the arbitrator, by filing a suit.

A judge's alleged prejudice must result from an extrajudicial source, and "[a] judge is not disqualified by a litigant's suit or threatened suit against him." *United States v. Studley*, 783 F.2d 934, 939–40 (9th Cir.1986). Neither is there automatic bias when one of the parties chooses to file suit against the arbitrator in his or her professional capacity. To hold otherwise would thwart the congressional policy favoring arbitration of labor disputes. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960).

## CONCLUSION

The district court order vacating the arbitration award is REVERSED.