**GEYER ROOFING INC., Plaintiff,**

v.

**ROOFERS LOCAL 30B, UNITED UNION OF ROOFERS, WATER PROOFERS AND ALLIED WORKERS, AFL–CIO, and The Joint Conference Board of Local 30B, Defendants.**

**Civ. No. 88–1667(SSB).**

United States District Court, D. New Jersey.

April 4, 1990.

---

Capehart & Scatchard, P.A. by Joseph F. Betley, Mt. Laurel, N.J., Attorneys for plaintiff Geyer Roofing, Inc.

Markowitz & Richman by Regina C. Hertzig, Richard H. Markowitz, Mt. Laurel, N.J., for defendant Roofers Local 30B.

## OPINION

BROTMAN, District Judge.

Presently before the court is defendant's motion for summary judgment. This motion requires an analysis of the degree of deference due a decision rendered by a board acting under color of a collective bargaining agreement.

## I. FACTS AND PROCEDURE

Plaintiff filed suit on April 7, 1988, alleging a breach of a collective bargaining agreement in violation of the Labor Management Relations Act, 29 U.S.C. 141 *et seq.* The crux of the complaint is that defendant interfered with plaintiff's contract with Irwin & Leighton, Inc. for the construction of a commercial roof in Lumberton, New Jersey (hereinafter the "CVS Wharehouse job"). Roofers Local 30B, United Union of Roofers, Water Proofers and Allied Workers, AFL–CIO (hereinafter "Local 30B") intervened because plaintiff was engaged in the construction of a commercial roof at the lower residential roofing prices. The dispute was submitted to the Joint Conference Board (hereinafter the "JCB"), pursuant to the terms of the collective bargaining agreement then in place between plaintiff and Local 30B. The JCB ruled that the CVS Wharehouse job was not governed by the terms of the collective bargaining agreement. After this decision, Irwin & Leighton terminated its contract with plaintiff.

Plaintiff contends that the JCB decision was a fraud and that the entire process was to punish George Geyer (hereinafter "Geyer"), president of Geyer Roofing Inc. (hereinafter "Geyer Roofing"), for his testimony against the union in the trusteeship proceedings in *United States v. Local 30,* 686 F.Supp. 1139 (E.D.Pa.1988), *aff'd,* 871 F.2d 401 (3d Cir.1989) (hereinafter *"Local 30"*). Local 30B argues that the JCB decision was reached pursuant to the method of dispute resolution selected by the parties, and therefore must be accorded a wide measure of deference. Plaintiff asserts that the JCB resolution is not entitled to any deference because it was the product of fraud and deceit. These contentions require an extensive review of the factual background, as viewed in the light most favorable to plaintiff, the non-moving party.

Plaintiff is a roofing contractor engaged almost exclusively in the commercial roofing business. Amended Verified Complaint at 4. Within a few months of the commencement of operations in the early spring of 1983, Bob Crosley, a representative of Local 30B, approached Geyer and told him that he had better sign a collective bargaining agreement with the union. Deposition of G. Geyer at 15. Geyer responded that he was not interested in joining the union. Testimony of George Geyer in *Local 30,* reported at 686 F.Supp. 1139 (E.D.Pa.1988), *aff'd,* 871 F.2d 401 (3d Cir. 1989), at 784 (hereinafter "Testimony of G. Geyer"). In the fall of that year, the tires of one of plaintiff's trucks were punctured. Testimony of G. Geyer at 785.

In August, 1984, when plaintiff had finished roughly fifty percent of the work at the "Freelance Site," vandals damaged a part of the unfinished roof, stuffed roof drains with shirts, destroyed cans of roofing cement, and stole a generator. Testimony of G. Geyer at 787–790.[1]

After further contact with the union, Geyer agreed to a meeting in the spring of 1985 with Joseph Kinkade and Gary McBride, two union representatives. Geyer described this meeting in his deposition as follows:

> We talked about the problems that I had been having, such as, the Freelance job and the fact that they were continuing to, the union was, continuing to call me periodically about joining them. We talked about another roofer by the name of Bill Hargrove, who was non-union. At which point Joe said, we're going to kill him. And I felt very intimidated and we discussed whether or not I should sign up with the roofers union, at which time I agreed that I would.

Deposition of G. Geyer at 21. George Geyer further stated at his deposition that there was some slight discussion of the kind of work that Geyer Roofing performed:

---

**1.** There are other incidents alleged which need not be set forth as they only repeat the same theme.

I don't recall talking about sizes of jobs. I know I recall Joe handed me this blue book and right on it it said residential and I said to him, I don't do residential work. Why are you asking me to sign this? And he said that's the agreement we have for you to come into the union. And I didn't question it further. But as far as size of jobs, I don't remember discussing that. I told him I did commercial roofing work strictly, nothing but.

Deposition of G. Geyer at 22.

The relations between plaintiff and the union improved once plaintiff had signed the collective bargaining agreement. Although occasionally someone from the union would call to inquire about a commercial job plaintiff was performing, Geyer would refer the caller to Kinkade, and he would encounter no further problems. Plaintiff adhered to the wage rates set forth in the collective bargaining agreement, and submitted the appropriate contributions to the union pension, welfare, industry, and vacation funds.

Geyer was not alone in finding himself confused as to the dichotomy between commercial and residential roofing unions. As Judge Bechtle found:

> The structure of the Roofers Union is that Local 30, the older part of the Union, is *intended* to cover commercial work, whereas Local 30B is *intended* to cover residential non-commercial work. This organizational form, however, has been rearranged and exceptions have often been made so that in some cases the exceptions swallowed the rule. Thus many contractors have been and remain confused as to whether they are expected by the Union to use Local 30B members or Local 30 members. Hopefully the newly elected leaders of the Union

can clear up this confusion created by the old corrupt regime.

*Local 30*, 686 F.Supp. at 1163 (emphasis in original), *aff'd*, 871 F.2d 401 (3d Cir.1989).

On December 27, 1987, Geyer testified against the union in the civil RICO action pending in the United States District Court in the Eastern District of Pennsylvania. Some flavor of Geyer's testimony in that case can be gleaned from the following factual finding:

> In the case of non-Union roofer George Geyer ("Geyer"), for example, the Roofers Union relied exclusively on sabotage of Geyer's vehicles, extensive vandalism to a roof, theft of equipment, and a threat that "There is no way you are going to do that job as a non-union contractor" from business agent Joseph Kinkade.

*Id.* at 1150, *aff'd*, 871 F.2d 401 (3d Cir. 1989).

On January 4, 1988, plaintiff entered into the CVS Wharehouse project contract with Irwin & Leighton, Inc. Exhibit C to Amended Verified Complaint. After complaints and threats of picketing from the union failed to bring a halt to plaintiff's work on the CVS Wharehouse project, Amended Verified Complaint at 6, Local 30B called for a JCB arbitration pursuant to Article VII of the collective bargaining agreement.[2]

On February 23, 1988, the JCB convened to resolve the dispute. Prior to the meeting, Gary McBride, a union business agent, told Geyer the result of the JCB decision would be that Geyer would be found to be wrong, and that he " 'was going to be thrown off the Irwin and Leighton job.' " Deposition of G. Geyer at 81 [Ga 86].

The JCB was composed of Joseph Crosley, Thomas Pedrick, and Ed Gregory, the employer representatives, and Eugene Fleming, Joseph Spitzer, and Joseph Karas,

2. Section 1 of Article VII provides:

For the purpose of administering this Agreement, adjusting disputes between the parties and/or co-parties hereto, and promoting the legitimate interests of the composition roofing, damp and waterproofing industry in general, the Association and the Union shall

create and maintain a joint administration body to be known as the Joint Conference Board, consisting of three members of the Association and three members of the Union. The three Association representatives shall be selected by the Association from the group of Employers who are parties to this Agreement.

the three roofing contractors association representatives. According to the court's decision in the trusteeship proceeding, Crosley was not eligible for office, 686 F.Supp. at 1161–62 (fact-finding 134), 1170, *aff'd*, 871 F.2d 401 (3d Cir.1989), and Pedrick had been a member of the "SWAT Team" sent to terrorize recalcitrant employers. *Id.* at 1159 (fact-finding 116), *aff'd*, 871 F.2d 401 (3d Cir.1989). Gregory was a criminal defendant to a complaint filed by Geyer. Deposition of Ed Gregory at 116.

Philip Cimini, a union business agent, presented the union's case, and an attorney presented plaintiff's case. Cimini was the recommended subject of a state criminal investigation. *Local 30*, 686 F.Supp. at 1161 (fact-finding 131), *aff'd*, 871 F.2d 401 (3d Cir.1989).

On March 11, 1988, the JCB rendered its decision finding that the collective bargaining agreement did not apply to the CVS Wharehouse job. The effect of that decision, plaintiff claims, is that he was thrown off the CVS Wharehouse job.

## II. DISCUSSION

■ The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moveover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249– 50, 106 S.Ct. at 2510–11.

■ The scope of judicial review of an arbitration award is limited. *See Roberts & Schaefer Co. v. Local 1846, United Mine Workers of America*, 812 F.2d 883, 885 (3d Cir.1987); *id.* at 886 (Hunter, J., dissenting). Federal labor law encompasses the "[f]ederal policy in favor of settling labor disputes by arbitration[, which in turn] requires that courts refrain from reviewing the merits of arbitration awards." *Super Tire Eng. v. Teamsters Local Unions No. 676*, 721 F.2d 121, 123–34 (3d Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984). In reviewing an arbitration award, a district court is "limited to determining whether an award 'draws its essence from the collective bargaining agreement.'" *Super Tire*, 721 F.2d at 123–24, *cert. denied*, 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984). *Accord Teamsters Union Local No. 115 v. DeSoto*,

*Inc.*, 725 F.2d 931, 934 (3d Cir.1984) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

■ There are, however, limits to the deference owed arbitration awards, and courts will not enforce awards that are procured by fraud or coercion. *High Concrete Structures, Inc. v. Local 166*, 879 F.2d 1215, 1218 (3d Cir.1989); *Office and Professional Employees International Union v. Washington Metropolitan Area Transit Auth.*, 724 F.2d 133, 140 (D.C.Cir. 1983); *Arco–Polymers, Inc. v. Local 8–74*, 671 F.2d 752, 754 n. 1 (3d Cir.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); *Yates v. Yellow Freight System*, 501 F.Supp. 101, 104 (S.D.Ohio 1980). The mere allegation of partiality is not sufficient; the party challenging the arbitrator's award must create a " 'reasonable impression of partiality.' " *Toyota of Berkeley v. Local 1095*, 834 F.2d 751, 756 (9th Cir.1987) (citing *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir. 1985)), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988). *Accord Local 814 v. J & B Systems Installers & Moving*, 878 F.2d 38, 40 (2d Cir.1989) (per curiam) (arbitration award may be overturned " 'where a reasonable person would have to conclude that an arbitrator was partial to one party of the arbitration' ") (quoting *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984)).

The Supreme Court recently refused to decide whether a court may refuse to enforce, on public policy grounds, an arbitrator's award issued under the terms of a collective bargaining agreement. *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 374 n. 12, 98 L.Ed.2d 286 (1987); *id.* 108 S.Ct. at 375 (Blackmun, J., concurring). The Court did observe, however, that prior decisions had established only a limited public policy exception:

> Two points follow from our decision in [*W.R. Grace & Co. v. Rubber Workers*,

461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) ]. First, a court may refuse to enforce a collective bargaining agreement when the specific terms contained in the agreement violate public policy. Second, it is apparent that our decision in this case does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy. Although we discussed the affect of that award on two broad areas of public policy, our decision turned on our examination of whether the award created any explicit conflict with "other laws and legal precedents" rather than an assessment of "general considerations of supposed public interests."

*Id.* 108 S.Ct. at 373.

■ This is a case where judicial enforcement of the JCB decision would violate the public policy against fraud and coercion. When viewed in the light most favorable to plaintiff, there is evidence sufficient to show that Geyer consented to the collective agreement because he was coerced. Moreover, plaintiff has produced evidence sufficient to show that the JCB procedure was partial to the union: McBride informed Geyer of the board's decision before the arbitration took place. The JCB had not been used to resolve a dispute under the Local 30B collective bargaining agreement in more than twenty years; this also indicates that the procedure was suspect. The most impressive evidence, however, is that Gregory, a member of the panel of the JCB which decided the dispute, was a defendant in a criminal action instituted by Geyer.

Defendant offers several counter-arguments which merely demonstrate that there are material facts in dispute. For example, defendant claims that the JCB was invoked on advice of counsel, and "convened under the leadership of the Union's newly elected officers." Defendant's Reply Brief at 8. If true, these facts may weaken plaintiff's claim, for they suggest that McBride's statement that "they're going to find you wrong" was merely a prediction, and not a statement of fact based

on inside information. In the context of a motion for summary judgment, McBride's statement must be considered to be the latter rather than the former.

Local 30B also argues that plaintiff's claim necessarily fails regardless of what facts surround plaintiff's acceptance of the terms of the collective bargaining agreement. On one hand, if plaintiff was coerced into signing the agreement, then the agreement is invalid, and the court lacks jurisdiction. On the other hand, if there was no coercion, then the JCB decision must stand. This argument is not persuasive. The evidence of coercion as to the signing of the agreement is offered not to show the collective bargaining agreement was invalid, but to show that the JCB decision is subject to a more exacting review for bias. The court does not understand plaintiff to challenge the existence of the contract, although plaintiff does appear to take a precarious position. The agreement reached between Geyer and Kinkade, as a union representative, may be one of those referred to by Judge Bechtle in which the exceptions swallowed the general rule. Congress was well aware of the aura of violence and intimidation that surrounds some unions, *see* 29 U.S.C. § 151, and this court will not invoke an overly technical analysis of plaintiff's position in order to defeat federal jurisdiction.

■ Local 30B argues that plaintiff waived any right to object to the partiality of the members of the JCB by failing to raise the objection before the JCB. As a general rule, "a grievant must object to an arbitrator's partiality at the arbitration hearing before such an objection will be considered by the federal courts." *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358–59 (6th Cir.1989) (citing *Kinney Air Conditioning*, 756 F.2d at 746; *Early v. Eastern Transfer*, 699 F.2d 552, 558 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983)), *cert. denied*, —

U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). "The successful party in the grievance may not rely on the failure to object for bias, however, unless '[a]ll the facts now argued as to [the] alleged bias were known ... at the time the joint committee heard their grievances.' " *Apperson*, 879 F.2d at 1359 (quoting *Eastern Transfer*, 699 F.2d at 558), *cert. denied*, —— U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). *See United Steelworkers of America Local 1913 v. Union R.R. Co.*, 648 F.2d 905, 913 (3d Cir.1981).

In the instant case, plaintiff did make a general objection to the JCB hearing. *See* Deposition of G. Geyer at 86–87. Plaintiff also indicates that the facts found by Judge Bechtle in *Local 30* were not known to plaintiff at the time of the JCB hearing; the *Local 30* opinion was issued on May 23, 1988, and the JCB convened on February 23, 1988 and rendered its decision on March 11, 1988. Plaintiff could not have raised before the JCB its objections based on the facts found in *Local 30*. The waiver rule therefore does not preclude review of plaintiff's claim of partiality.

Local 30B finally argues that the court should remand the dispute to the JCB for final resolution should it determine that the JCB determination is not entitled to deference.[3] The union argues that the JCB would be impartial on remand because of the on-going oversight of the union by the court in *Local 30*. Local 30B raised this argument for the first time in its response brief, and plaintiff did not take any position on this issue at oral argument.

■ The general rule is that an arbitrator's decision is not open to remand. *DeSoto*, 725 F.2d at 940. In those cases where a court has ordered a remand, the remand has been for clarification by the arbitrator of his or her prior decision. *See American Federation of State, County and Municipal Employees, Local Lodge No. 1803 v. Walker County Medical Center, Inc.*, 715

---

**3.** In light of the court's resolution of the summary judgment motion as to the federal law claims, it is unnecessary to address defendant's jurisdictional attack on the pendent claims

based on *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and *Lovell Manufacturing v. Export–Import Bank of the United States*, 843 F.2d 725 (3d Cir.1988).

F.2d 1517, 1519 (11th Cir.1983) (per curiam) (remanding to arbitrator to clarify meaning of term used in decision); *United Mine Workers of America Dist. No. 5 v. Consolidated Coal Co.*, 666 F.2d 806, 811 (3d Cir.1981) ("it is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier [arbitration] proceeding") (citations omitted); *Harvill v. Roadway Express, Inc.*, 640 F.2d 167, 170 (8th Cir.1981) ("[o]rdinarily a suit to enforce an unclear award should be remanded to the grievance tribunal for clarification").

■ This litigation does not turn on an interpretation of the substance of the JCB decision. Plaintiff's claim is that the JCB was not an impartial body. Remand to the JCB to clarify the March 11, 1988 decision would not advance the ultimate resolution of this litigation. Although a remand might serve to cure plaintiff's claim of partiality in that the JCB now operates under the supervision of the court under the terms of the decree imposed in *Local 30*, there is evidence suggesting that Geyer did not consent to resolution of disputes by a private board. More importantly, the collective bargaining agreement expired in November, 1988.[4] This is not the traditional case that calls for a remand, and, under the unique circumstances that surround this litigation, remand would be inappropriate.

## III. CONCLUSION

For the foregoing reasons, the motion of Local 30B for summary judgment will be denied.

---

4. Local 30B argues that plaintiff unjustly "seeks to invoke its right to enforce the collective bargaining agreement while abrogating the Union's right to employ the dispute resolution mechanism established by such agreement." Defen-dant's Reply Brief at 13. Of course, this describes the position taken by every party to a collective bargaining agreement who claims the arbitration board was biased.