**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SYNCOR INTERNATIONAL CORPORATION,
a Delaware corporation,
<u>Plaintiff-Appellee,</u>

v.

No. 96-2261

DAVID L. MCLELAND, an individual,
<u>Defendant-Appellant,</u>

JEFFREY CLANTON,
<u>Party-in-interest.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David L. Faber, District Judge.
(CA-95-565-1)

Argued: June 4, 1997

Decided: August 11, 1997

Before WILLIAMS and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Barry Lee Bruce, BARRY L. BRUCE & ASSOCIATES,
Lewisburg, West Virginia, for Appellant. Benjamin Lee Bailey,
BOWLES, RICE, MCDAVID, GRAFF & LOVE, Charleston, West
Virginia, for Appellee. **ON BRIEF:** Ronda L. Harvey, BOWLES,

RICE, MCDAVID, GRAFF & LOVE, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David L. McLeland appeals the district court's order granting the motion of Syncor International Corporation (Syncor) to enforce the final award resulting from an ex parte arbitration proceeding. McLeland claims that the arbitration award should not have been enforced because the arbitration proceeding was conducted ex parte and because the dispute was beyond the scope of the arbitration agreement between the parties. In addition, McLeland argues that the district court reviewed the arbitrator's award under an incorrect standard. Finding no error, we affirm.

I.

Syncor compounds and distributes nuclear pharmaceuticals, owns and operates nuclear pharmacies, and sells related products and services. McLeland began his employment with Syncor in the mid-1980s. Although he left Syncor for a brief period in the late 1980s, McLeland continued to work for Syncor in various capacities for nearly ten years.

On April 10, 1990, McLeland signed an Invention, Secrecy and Other Matters Agreement (the 1990 Secrecy Agreement), which specifically prohibited McLeland from using, directly or indirectly, proprietary information to solicit Syncor's customers. Soon thereafter, he was promoted to the position of Pharmacy Manager. Because Syncor's policy at that time was to require all managerial level employees to sign employment agreements, on August 26, 1991, McLeland

2

signed a Director/Manager Employment Agreement (the 1991 Employment Agreement). The Employment Agreement, among other things, (1) contained a clause that prohibited McLeland from competing against Syncor for ninety days following termination of his employment; (2) prohibited McLeland from encouraging other employees to leave Syncor; (3) created an irrevocable consulting agreement option during the term of the Employment Agreement and for ninety days after its termination; and (4) provided for injunctive relief and attorneys' fees as available remedies for any dispute arising thereunder. Later, after rising to the position of Midwest Regional Manager for Syncor, McLeland signed a second Director/Manager Employment Agreement (the 1993 Employment Agreement). The 1993 Employment Agreement expressly superseded the 1991 Employment Agreement. Both the 1991 and the 1993 Employment Agreements bound McLeland to the 1990 Secrecy Agreement.

On November 28, 1994, Syncor informed McLeland that his employment was to be terminated, for business reasons, on December 31, 1994. Syncor policy provided for ten weeks of severance pay for terminated employees. In addition to this ten weeks of severance pay, Syncor offered McLeland an additional twelve weeks in exchange for his execution of a release agreement. On December 6, 1994, McLeland executed the release, thereby earning twelve additional weeks of severance pay and releasing Syncor from any claims based on McLeland's termination.

Shortly after McLeland's termination, Syncor rehired him as a temporary pharmacist. Upon his rehire, McLeland signed an arbitration agreement (the Arbitration Agreement) and a second Invention, Secrecy and Other Matters Agreement (the 1995 Secrecy Agreement). Syncor did not require McLeland to sign another employment agreement. In March 1995, Syncor again terminated McLeland.

Beginning around October 1994, before his first termination notice, McLeland became interested in establishing a nuclear pharmacy, which he hoped to operate as a joint venture with Syncor, in the Beckley-Princeton area of West Virginia. He approached Wade Hopkins, the Director of Pharmacy Expansion for Syncor, with his plan to open such a pharmacy. Within a month, McLeland learned that Syncor was not interested in entering a joint venture to open the pro-

posed nuclear pharmacy. Hopkins, however, felt that McLeland's idea was a good business investment, and therefore agreed to loan McLeland $20,000 to develop the business. Soon thereafter, in order to repay the loan, McLeland gave Hopkins a 50% ownership interest in the proposed pharmacy.

In January 1995, McLeland incorporated Princeton Diagnostic Isotopes, Inc. (PDI), under West Virginia law. Hopkins, believing that PDI would not adversely affect Syncor's relationship with its customers, became involved in the business. There is no evidence, however, that Hopkins ever discussed PDI or his involvement with any of his superiors. Nevertheless, in February 1995 Syncor discovered that McLeland had incorporated PDI, and McLeland then tried to sell all or part of PDI to Syncor. The negotiations failed. Meanwhile, Syncor purchased the 50% share in PDI owned by Hopkins. However, McLeland, who held the stock certificates, has refused to transfer them.

In late 1994 and early 1995, McLeland actively solicited the business of the two largest Syncor accounts in the Beckley-Princeton area, Beckley Hospital and Raleigh General Hospital. Although Syncor retained both accounts, the hospitals expressed interest in switching to PDI. There is also evidence that McLeland attempted to recruit an employee of the Huntington Pharmacy, the pharmacy through which Syncor served accounts in the Beckley-Princeton area.

On May 18, 1995, Syncor submitted an arbitration demand against McLeland to the American Arbitration Association (AAA), claiming that McLeland's activities involving PDI had breached the 1993 Employment Agreement, the 1990 Secrecy Agreement, and the 1995 Secrecy Agreement. On July 12, 1995, AAA scheduled the arbitration for August 21, 1995, and notified both parties. McLeland decided not to attend the arbitration, based on his belief that the dispute over PDI was not arbitrable. Meanwhile, on August 2, 1995, Syncor filed in the United States District Court for the Southern District of West Virginia a complaint and petition to compel arbitration against McLeland. On August 23, 1995 -- two days after the arbitration proceeding -- McLeland answered the complaint, denied the applicability of the Arbitration Agreement to the pending dispute, and counterclaimed, alleging intentional infliction of emotional distress, intentional interference with his business interests, and anticompetitive behavior.

4

Then, on September 21, 1995, Syncor filed an answer to McLeland's counterclaim and its own counterclaim, to which McLeland filed an answer on October 3, 1995.

Despite the flurry of activity in the federal court, the arbitration proceeded as scheduled and was conducted ex parte on August 21, 1995. On September 29, 1995, the arbitrator issued a written award in which he found that McLeland violated the 1990 Secrecy Agreement, the 1995 Secrecy Agreement, and the 1993 Employment Agreement. The arbitrator ordered certain equitable relief, including an award to Syncor of 100% of the stock of PDI. On October 17, 1995, Syncor filed a motion in the district court to enforce the award. After a hearing at which McLeland testified, the district court granted Syncor's motion to enforce the arbitration award.

McLeland promptly moved for a new trial and to set aside the judgment in favor of Syncor. Syncor responded in opposition to the motion on April 25, 1996. On August 19, 1996, the district court denied McLeland's pending motions and upheld its previous order enforcing the arbitration award. McLeland appeals, claiming that the arbitration award is not enforceable because it was conducted ex parte and because the dispute was not arbitrable. He further claims that the district court erred by applying an incorrect standard of review in approving the arbitrator's allegedly erroneous rulings. Applying a de novo standard of review to the district court's decision enforcing the arbitration award, see Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 145 (4th Cir. 1993), we address each issue in turn.

II.

McLeland first argues that the arbitration award is unenforceable because it is the product of an ex parte proceeding. The district court summarily rejected this argument, concluding that AAA "rules provide for an arbitration hearing to proceed ex parte, if a party who has received proper notice does not participate in the hearing." (J.A. at 248-49.) This conclusion is correct. See Sheet Metal Workers Int'l Ass'n Local Union No. 33 v. Power City Plumbing & Heating, Inc., 934 F.2d 557, 561 (4th Cir. 1991) (holding that if the opposing party was served with proper notice and was aware of the arbitration pro-

5

ceeding, then "[t]he arbitration award is valid and fully enforceable despite [that party's] absence").

McLeland, however, tries to draw a distinction between arbitration where the arbitrator is to be jointly selected by the parties and arbitration where the arbitrator is either pre-selected or joint selection is not necessary. He points out that AAA rules, which the parties agreed to follow in the Arbitration Agreement, state that"[u]nless the law provides to the contrary, the arbitration may proceed in the absence of any party . . . who, after due notice, fails to be present." (J.A. at 136-37.) In McLeland's view, when the arbitrator is to be jointly selected by the parties, then "the law provides to the contrary."

To support this position, McLeland relies upon Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095, 834 F.2d 751 (9th Cir. 1987). In that case, the court explained:

> [T]he general trend of authority is clear. Under a collective bargaining agreement specifically providing for designation of an arbitrator without the participation of both parties, an arbitrator may issue an enforceable default award when one party fails to attend the hearing. If an agreement provides that the parties shall jointly select an arbitrator, however, a court may refuse to enforce an award made following an ex parte hearing before an arbitrator selected without the defaulting party's cooperation, on the grounds that the party not in default should have sued to compel arbitration.

Id. at 754 (citations omitted). Here, McLeland argues that because the agreement provides for joint selection of the arbitrator, the ex parte proceeding should not be enforced.

Without expressing any opinion on the merits of the Ninth Circuit's rule, we reject McLeland's argument. First, McLeland errs in claiming that the arbitrator here was to be jointly selected by the parties. On the contrary, the AAA rules, which are applicable here, provide:

> [I]mmediately after the filing of the demand or submission, the AAA shall send simultaneously to each party to the dis-

6

pute an identical list of names of persons chosen from the panel.

Each party to the dispute shall have 10 days from the transmittal date in which to strike any names objected to, number the remaining names in order of preference, and return the list to the AAA. . . . If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve.

(J.A. at 267.) Therefore, AAA rules provide only for joint input, not joint selection. Second, not only do AAA rules provide the method of selection here, but they also recognize the validity of an ex parte arbitration. Under McLeland's view AAA rules would be self-defeating. An ex parte arbitration proceeding under AAA rules would never be enforceable because of the method of selection described in the AAA rules. Third, McLeland's objection more properly concerns the arbitrator that was actually selected; insofar as he complains about being deprived of his strikes, the issue is whether the arbitrator who conducted the arbitration was biased. McLeland has made no such claim, however, and has never objected to the choice of arbitrator. By his own admission he was not prejudiced by his failure to participate in the selection of the arbitrator. We therefore conclude that the arbitration proceeding here was valid despite McLeland's failure to attend.

III.

Next, McLeland argues at some length that the dispute is not arbitrable under the Arbitration Agreement. The Arbitration Agreement itself provides for arbitration if:

(a) Employee disagrees with an Employer decision involving Employee's compensation, position or other conditions of employment or (b) if a dispute arises out of the separation from employment of Employee by Employer then first efforts to resolve the disagreement or dispute shall be according to the problem solving procedure in the Employ-

7

er's Employee Handbook. If such disagreement or dispute is not resolved by such problem solving procedures, then it shall be resolved by binding arbitration, at the request of either party, in accordance with the rules of the American Arbitration Association.

(J.A. at 27.) McLeland claims that the dispute here does not fall within the reach of either provision.

The scope of the arbitration agreement is a question to be determined by the court, not the arbitrator, and is subject to de novo review. See Summer Rain v. Donning Co./Publishers, Inc., 964 F.2d 1455, 1459 (4th Cir. 1992); see also First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (quotations and alterations omitted)). However, "`any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); see also O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997) (same); American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (noting that "we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (quotation omitted)). The district court invoked this presumption, applied a de novo review, and concluded that the dispute was arbitrable:

It appears to the court that the dispute to which Syncor wished to arbitrate related to McLeland's violation of the [1995 Secrecy Agreement] while he was still employed by Syncor, his refusal to execute the Consulting Agreement, and the parties' inability to negotiate a deal involving PDI. The court finds that these matters relate to the separation of respondent from his employment with Syncor, and also relate to respondent's disagreement with Syncor's decisions involving the conditions of employment. Specifically, Syncor decided to exercise its contractual option to engage

8

McLeland as a consultant, and McLeland refused to abide by the Consulting Agreement. In addition, the parties are in disagreement over the issue of whether McLeland was entitled to ninety days notice before his termination, which clearly relates to McLeland's separation from his employment. Finally, McLeland was, in fact, separated from his employment when Syncor discovered that he had established PDI.

(J.A. at 251-52.) We agree with this assessment, and McLeland's arguments to the contrary -- that the arbitrator somehow fouled up the issue by deciding the arbitrability question himself, that the arbitrability question remains undecided, and that there is no evidence that the "problem-solving procedures" described in the Employee Handbook were complied with -- are not persuasive. Accordingly, we affirm the district court's conclusion that the dispute was arbitrable.

IV.

McLeland's final argument on appeal is that the district court applied an incorrect standard in reviewing the arbitrator's decision. The district court relied on the standard of review set forth in Upshur Coals Corp. v. United Mine Workers of America Dist. 31, 933 F.2d 225 (4th Cir. 1991). In that case, we explained:

> [A]n arbitrator's . . . interpretation of the law is accorded deference as well. A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law. An arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may only be reversed when arbitrators understand and correctly state the law, but proceed to disregard the same.

Id. at 228 (quotations and citations omitted). Ordinarily, this is the correct standard. But here, the Arbitration Agreement provided that "[t]he arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected by judicial review for any such error." (J.A. at 27.) According to McLeland,

9

this language means that the district court should have conducted full de novo review of the arbitrator's award.

McLeland is correct, to a point. As explained by the Fifth Circuit:

> Usually . . . the district court's review of an arbitration award is extraordinarily narrow. In a proceeding to confirm or vacate an arbitration award, the Federal Arbitration Act ("FAA") circumscribes the review of the court, providing that an award shall not be vacated unless: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers.
>
> In this case, however, the parties contractually agreed to permit expanded review of the arbitration award by the federal courts. Specifically, their contract details that "[t]he arbitration decision shall be final and binding on both parties, except that errors of law shall be subject to appeal." Agreement Apr. 29, 1991, at Article 9 (emphasis added). Such a contractual modification is acceptable because, as the Supreme Court has emphasized, arbitration is a creature of contract . . . . Because these parties contractually agreed to expand judicial review, their contractual provision supplements the FAA's default standard of review and allows for de novo review of issues of law embodied in the arbitration award.

Gateway Technologies, Inc. v. MCI Telecommunications Corp., 64 F.3d 993, 996-97 (5th Cir. 1995) (quotation and citations omitted); see also Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 479 (1989) ("Just as [the parties] may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration may be conducted" (citation omitted)). The Fifth Circuit also pointed out that "the FAA does not prohibit parties who voluntarily agree to arbitration from providing contractually for more expansive judicial review of the award." Gateway Technologies at 997 n.3. We therefore agree with McLe-

10

land's contention that the district court should have reviewed the arbitrator's legal conclusions de novo.

As such, the district court erred. The district court relied "on the premise that an arbitrator's award is entitled to a special degree of deference on judicial review, and may only be overturned where it is in manifest disregard of the law," and found "that the arbitrator's award was not in manifest disregard of the law." (J.A. at 258.) We decline to remand the case, however, because our own de novo review of the arbitrator's decision convinces us of its correctness. See Gateway Technologies, 64 F.3d at 997 (noting that the district court erred in applying a deferential standard of review when the arbitration agreement called for de novo review, but declining to remand the case). McLeland argues that the arbitrator erred (1) in applying the terms of the 1993 Employment Agreement and the 1990 Secrecy Agreement; (2) in finding that McLeland did not have corporate approval to engage in any of the activities at issue; and (3) in awarding relief beyond that authorized by the Arbitration Agreement. We have reviewed the record, briefs, and pertinent case law in this matter, and we have had the benefit of oral argument. Our de novo review persuades us that the arbitrator did not commit error, either legal or factual, in issuing his award. Accordingly, we conclude that although the district court applied an incorrect standard of review, that error was harmless.

V.

In conclusion, we hold that the ex parte arbitration was valid, that the dispute here was subject to arbitration, and that the arbitrator did not commit legal error in fashioning its award. The district court's order enforcing the arbitration award is therefore affirmed.

AFFIRMED