Ernest E. SARGENT, et al.

v.

**PAINE WEBBER JACKSON & CURTIS, INC., ndba as PaineWebber Incorporated, et al., Appellants.**

No. 88–7133.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1989.

Decided Aug. 15, 1989.

Harvey A. Levin, with whom Michael I. Smith, Washington, D.C., was on the brief, for appellants.

Stephen G. Milliken, Washington, D.C., for appellee.

Before ROBINSON, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

In August 1983 Ernest E. Sargent and his daughter Cynthia L. Sargent opened an account with PaineWebber. To it they transferred 400 shares of Coleco Industries stock, some put and call options on Coleco, and some other (unspecified) securities. Ernest Sargent maintains that this portfolio embodied his life's savings.

The price of Coleco stock had been sinking since the Sargents' original purchase, and it continued to do so after the transfer. Soon after moving the account, Ernest Sargent sought to address the problem by directing Kevin Greenan, a PaineWebber account executive, to implement a "cost averaging plan." This consisted of

purchas[ing] additional shares of Coleco stock at the decreased market price to reduce his average cost basis in all of his Coleco stock. When the average cost basis of the Coleco stock was equal or close to the market value, Sargent planned to sell all of that stock thereby eliminating or reducing any financial loss.

Arbitration Complaint ¶ 12. The obvious flaw of such a scheme is that if the stock does not rise as hoped, it will amount to throwing good money after bad.

In any event, the Sargents' claim is that PaineWebber and Greenan were negligent in *not* rigorously pursuing the plan. They initially brought suit in district court, seeking $245,000 in compensatory damages (later amended to $256,000) and $500,000 in punitives. On PaineWebber's motion to stay the case pending arbitration, as provided in the customer agreements between the Sargents and PaineWebber, the court dismissed the action without prejudice. The arbitrators conducted a three-day hearing and announced a decision awarding the Sargents $46,000. They stated only that

> having heard and considered the proofs of the parties, [a majority of the arbitrators] have decided and determined that in full and final settlement of the above-referenced matter, respondent Painewebber shall pay to the claimants the sum of $43,000.00 and respondent Kevin Greenan shall pay to the claimants the sum of $3,000.00.

The arbitrators did not explain how they reached this figure. The parties agree that the New York Stock Exchange rules require no explanation; it appears to be standard practice for arbitrators under those rules to give none.

The Sargents filed a new complaint, asking the district court to vacate the award, while PaineWebber cross-moved for an order of confirmation. Instead the court remanded the matter to the arbitration panel "for a full explanation of the manner in which damages were computed so as to permit effective judicial review." It viewed such an explanation as necessary if judicial review was to be "meaningful." 674 F.Supp. 920.

PaineWebber and Kevin Greenan appeal. They argue that the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), does not authorize a remand for explanation under the circumstances. We agree. Before addressing the point, however, we must dispose of the plaintiffs' challenge to our jurisdiction and the defendants' claim that the Sargents' motion to vacate was served too late.

■ Appellate jurisdiction rests on 28 U.S.C. § 1292(b) (1982). This allows an interlocutory appeal (with the consent of the court of appeals, which in this case has been granted through a motions panel of this court), where a district judge states, in an otherwise unappealable order, that he is

> of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . .

Application for an appeal under § 1292(b) does not automatically stay proceedings in the district court, but that court or the court of appeals may order a stay. 28 U.S.C. § 1292(b).

The Sargents' attack on our jurisdiction depends on the failure of the district court's order to track the language of § 1292(b), and on its omission of any citation of that section. The order reads:

> Upon consideration of the motion of defendants for a stay pending appeal of this Court's Orders of May 10, 1988 and December 8, 1987, and the opposition thereto, the Court finds (1) that defendants will possibly suffer harm in the lost [sic] of their right and expectation to a speedy and conclusive arbitration process, (2) that defendants have shown that serious questions of law exist, as to this Court's authority to order the arbitrators to file a memorandum with the Court giving a full explanation of the manner in which damages were computed, and (3) that plaintiffs' recovery will not be reduced and their right to recovery will not be diminished by a stay pending appeal.

*Sargent v. Paine Webber Jackson & Curtis, Inc.*, No. 84–2911, Order (D.D.C. June 27, 1988). The order then provides that the remand be "stayed pending appeal, pursuant to Rule 62, Fed.R.Civ.P." *Id.* A motions panel of this court granted defendants' application for an appeal, citing § 1292(b) and making findings in precisely its words. It added that the court was not deciding whether "in the absence of a section 1292(b) certification, there is an appealable order."

It is hard to view our earlier order except as reading the district court order as a certification under § 1292(b). If there be any ambiguity in our initial decision, however, we have no difficulty in making that finding ourselves. Obviously dispute may be avoided if district courts couch their § 1292(b) certifications in its terms and, to remove all doubt, cite it by section number. But the words of § 1292(b) are not a magic incantation (or a computer command) that has no effect if not given exactly. The court's intentions are plain. Not only are the words fairly close to those of § 1292(b), but there appears no explanation for the district court's stay other than as one that § 1292(b) authorizes as an accompaniment to a § 1292(b) certification. We have jurisdiction.

■ Defendants claim that the Sargents' claim was barred by the special three-months statute of limitations contained in 9 U.S.C. § 12 (1982). It requires:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is *filed or delivered*.

9 U.S.C. § 12 (1982) (emphasis added). The Sargents' complaint and motion were served November 26, 1986,[1] more than three months after the arbitrators' decision but within three months of the Sargents' receipt of it on August 26, 1986.

Defendants argue that "delivered" in the phrase "filed or delivered" must mean "mailed, or otherwise sent." They suggest that since delivery must always follow a decision's filing, to read it as referring to the arrival at some destination would render "filed" meaningless. Certainly defendants have identified a curiosity in the statute, but their interpretation hardly solves it: they suggest no way in which *mailing* could precede filing any more than delivery. Perhaps the drafters contemplated the possibility of some technically defective filing, and wanted to be sure that in such a case the time limit would begin to run on delivery. We certainly see no reason to adopt a construction that hopelessly twists the ordinary meaning of the word "delivered" without in any way solving the problem of possible surplusage. Nor would we be justified in excising "delivered" from the statute.

Defendants' argument that delivery is not synonymous with receipt does no better. While one can imagine cases in which the distinction could play a role, this is not one. The Sargents acknowledge receipt of the decision on the day it was delivered to the relevant address, and their complaint and motion were served within the required three months thereafter.

■ Turning to the merits, we find no basis for a remand to the arbitrators. The district court's review proceeds under § 10 of the Federal Arbitration Act, which authorizes it to vacate an arbitral award under any of the following conditions:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

---

1. The docket entries show only that the new complaint and motion to vacate were *filed* November 26, 1986, but the parties have treated this as the controlling date. This is correct if the Sargents served the papers by mail on the date of filing, and if (despite dismissal of the original complaint) the new one may be regarded as a "pleading subsequent to the original complaint" within the meaning of Rule 5(a), Fed.R.Civ.P., as Rule 5(b) makes service by mail complete on mailing.

9 U.S.C. § 10 (1982). The district court here appears to have proceeded under the theory that in the absence of explanation it could not be sure that the arbitrators had not "exceeded their powers" under § 10(d) or otherwise fallen into error so egregious as to require vacation of the award under § 10. Remand for explanation would enable it to obtain that assurance and exclude the possibility of a fatal error.

We reject the idea that a lump-sum award can be rejected for want of explanation (or, what is in effect almost the same thing, remanded for an explanation) in the absence of facts making it appear probable that the arbitrators committed an error justifying vacation of the award. If courts required an explanation on account of the mere possibility of such an error, they would in effect be requiring explanation almost universally. The Supreme Court has observed that arbitral awards may be made without explanation, see *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953), and the Second Circuit has so held. *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211 (2d Cir.1972). It reasoned that while arbitration "may not always be the speedy and economical remedy its admirers claim it is," *id.* at 1215,

> forcing arbitrators to explain their award even when grounds for it can be gleaned from the record will unjustifiably diminish whatever efficiency the process now achieves.

*Id.* (footnote omitted). In that case the arbitrators said only that they dismissed the claim, but, given the presence of "a number of theories" on which they might have decided, *id.*, the court found no need of further proceedings. Thus the court plainly believed that the necessary "gleaning" was normally possible so long as the record disclosed a permissible route to the stated conclusion.

The Second Circuit has rigorously applied this view. Even where the size of an award was said to suggest that the arbitrators might have considered lost profits or consequential damages despite a contractual agreement disallowing such recoveries, it held that

arbitrators may render a lump sum award without disclosing their rationale for it, and ... when they do, courts will not inquire into the basis of the award unless they believe that the arbitrators rendered it in "manifest disregard" of the law or unless the facts of the case fail to support it.

*Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir.1985). The court refused to vacate the award, viewing the challenge as no more than "speculation."

Clearly insistence on an explanation would increase the ability of courts to spot the sort of "manifest disregard" of the law that justifies overturning an arbitral award. Compare *Wilko v. Swan*, 346 U.S. at 440, 74 S.Ct. at 189 (Frankfurter, J., dissenting, asserts ability of courts to discover arbitrators' disobedience of the law, asserting as a premise the point rejected by majority—that they must give some form of opinion from which the disobedience will appear). But the absence of a duty to explain is presumably one of the reasons why arbitration should be faster and cheaper than an ordinary lawsuit. We thus agree with the Second Circuit that an explanation requirement would unjustifiably undermine the speed and thrift sought to be obtained by the "federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Here there is nothing to suggest that the arbitrators indulged in any disregard of the law. PaineWebber's defense throughout has been comparative negligence and ratification: that Ernest Sargent (who described himself as a first-time investor) was sophisticated, knew the risks, himself "directed" the trading in his account (he denied this), received notice of PaineWebber's trades, and failed to complain about PaineWebber's actions or alleged inactions during the crucial first five months he maintained an account—the months during which the losses occurred. Thus, it seems likely that in some form the arbitrators apportioned blame to both sides and calculated the award accordingly; plaintiffs offer no basis for thinking that such an out-

come showed "manifest disregard" of the law.

Plaintiffs rely heavily on decisions or dicta approving remand of an arbitral award for clarification of its *meaning*. See, e.g., *Galt v. Libbey–Owens–Ford Glass Co.*, 397 F.2d 439 (7th Cir.1968) (approving remand to determine whether arbitrators treated specific contract clause as within purview of arbitration provision); *Sobel v. Hertz, Warner & Co.*, 469 F.2d at 1216 (alluding to and distinguishing cases of remand to clarify what issues arbitrators resolved). These clearly have no application here. Plaintiffs' suggestion that the panel may not have resolved the punitive damages issue is utterly fanciful.

Plaintiffs also note the observation in *Siegel v. Titan Industrial Corp.*, 779 F.2d 891 (2d Cir.1985), that where an award "appears to have been reached on the basis of a precise mathematical calculation,"

> [a] remand for clarification ... would not improperly require arbitrators to reveal their reasons, but would instead simply require them to fulfill their obligation to explain the award sufficiently to permit effective judicial review.

*Id.* at 894. We do not read this as any material qualification of the view taken by the Second Circuit in *Sobel*. The court proceeds to cite *Sobel* immediately after the quoted passage and in fact goes on to hold that, despite obscurity as to the arithmetic leading to the award, there was no "manifest error," *id.*, and that the district court correctly declined to remand. Further, the circumstance to which the Second Circuit referred—apparent use of a "precise mathematical calculation"—is absent here.

The defendants' and district court's invocation of the goal of rendering judicial review "effective" or "meaningful" of course resonates with innumerable decisions in the field of administrative law remanding to an agency for a new or clearer articulation of its reasoning. As early as *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943), the Court remanded for a further explanation, stating that "the courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review."

See also *Greater Boston Television Corp v. FCC*, 444 F.2d 841, 850–53 (D.C.Cir. 1970). But as we have recently noted in another context, the statement cannot be read as a statement of any literal impossibility of meaningful or effective judicial review. *Women Involved in Farm Economics v. Department of Agriculture*, 876 F.2d 994, 998–1000 (D.C.Cir.1989). The *Chenery* court itself presented the requirement as manifesting a special form of deference to administrative agencies: a judicial assumption that an agency relied on a specific policy judgment, where there was no clear reason to think it had, would "intrude upon the domain which Congress has exclusively entrusted" to the agency. *Chenery*, 318 U.S. at 88, 63 S.Ct. at 459; see also *id.* at 94–95, 63 S.Ct. at 462–63; *Women Involved*, 876 F.2d at 999 (reliance on an argument of counsel "might actually restrict improperly the agency's future freedom of action"). The concern for preserving an agency's policymaking discretion clearly has no place in the context of arbitration.

More generally, it is simply not true that insistence on an explanation of the decision-maker's thought process is an automatic requirement of "effective judicial review." In the context of arbitration, where there is no statutory requirement that the panel state its reasons, and (as here) none imposed by the institution under whose auspices the arbitration occurred, it would seem to turn on a balance between the interest in rooting out possible error and the interest in assuring that judgment be swift and economical. We agree with the Second Circuit that the latter must generally prevail. As the record here fails to indicate the probability of "manifest disregard" of the law, there is no basis to insist on an explanation.

On the facts before it, the district court's duty was to grant the motion to confirm the award. The case is remanded for entry of a suitable order.

*So ordered.*