**NORDAHL DEVELOPMENT CORP., INC. & Steven R. Olson, Plaintiffs,**

v.

**SALOMON SMITH BARNEY, & Southwest Securities, Defendants.**

**Civil No. 03–1254–MO.**

United States District Court, D. Oregon.

March 1, 2004.

Nordahl Development Corp., Inc., South Haven, MI, pro se.

Stephen R. Olson, South Haven, MI, pro se.

Bruce L. Campbell, Ky B. Fullerton, Miller Nash, LLP, William L. Larkins, Jr., Larkins Vacura, LLP, Portland, OR, for Defendants.

## ORDER

MOSMAN, J.

Pro se plaintiffs Nordahl Development Corp. and Steven R. Olson ask the court to vacate an arbitration decision. Defendants Salomon Smith Barney ("SSB") and Southwest Securities ("Southwest") contend plaintiffs have failed to plead sufficient allegations to support an order vacating the arbitration decision. Before the court are three motions: plaintiffs' amended motion to vacate an arbitration award, Southwest's motion to dismiss for failure to state a claim, and SSB's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the reasons discussed below, Southwest's motion (Doc. # 11) is granted, SSB's motion (Doc. # 13) is granted, and plaintiffs' motion (# 9) is denied. However, the court grants plaintiff Steven R. Olson 60 days in which he may file an amended motion consistent with this order's reasoning, and also grants plaintiff Nordahl Development sixty days to find counsel.

## I

The following allegations are gleaned from plaintiffs' complaint and amended motion to vacate an arbitration award. Plaintiff Steven R. Olson, the sole shareholder of plaintiff Nordahl Development, traded securities through defendant SSB and Mydiscountbroker.com, a subsidiary of defendant Southwest. Plaintiffs complain defendants engaged in numerous improper practices in assisting plaintiffs with their trades: On several occasions, defendants overstated the equity in plaintiffs' accounts and their "margin credit." Thus plaintiffs based trading decisions on false information. Despite SSB's promises to plaintiffs it would repair the problem which had caused the false statements in plaintiffs' trading accounts, SSB failed to remedy the problem. In addition, plaintiffs suffered loss due to defendants' improper delays in executing plaintiffs' trades, the majority of which were executed by an unlicensed sales assistant.

Seeking the damages allegedly caused by defendants' improper trading practices, plaintiffs filed arbitration proceedings. Initially, two arbitrations were filed, one involving SSB in Chicago and another in Portland involving Southwest. The two proceedings eventually were consolidated before an arbitration panel in Portland. This panel ultimately issued a decision in favor of defendants. Plaintiffs now seek to overturn the panel's ruling.

Several of plaintiffs' complaints about the panel are procedural in nature:

- one panel member failed to sign any impartiality oath, while the other two panel members signed impartiality oaths only as to Southwest but not as to SSB;
- the panel failed to tell plaintiffs about the panel's hearing policies and procedures regarding the introduction of evidence;
- the panel agreed to delay the arbitration for over a year to accommodate SSB's in-house counsel;
- the panel refused to allow plaintiffs to file an amended pleading addressing newly found evidence of a faulty computer trading system owned by Southwest;
- the panel refused to issue a single witness subpoena on behalf of the *pro se* plaintiffs because the arbitration procedural rules permitted only licensed attorneys to obtain subpoenas;

- the panel improperly delayed ruling on a motion to amend filed by Southwest;
- the panel failed to issue legible, accurate, and complete orders regarding decisions and stipulations obtained at pre-hearing conferences;
- the panel permitted Southwest's expert witness's attendance at the hearing before he testified, while requiring plaintiffs' witnesses to testify before they could attend the hearing;
- the panel accepted an improperly executed submission agreement from Southwest and did not disclose this fact until a post-hearing order; and
- contrary to NASD rules, under which a case must be assigned to the NASD office closest to the complainants' residence, the proceedings in Chicago (the proper venue) were transferred to Portland.[1]

Plaintiffs further allege the panel willfully breached the panel's rules prohibiting private communication between counsel and the arbitrators. According to plaintiffs, SSB attorney Bruce Campbell had an extended private conversation with the panel's chairwoman at the close of the hearing and before the panel rendered a decision. The panel's "hearing procedures" required, in part, "that all parties and their counsel or representatives refrain from engaging in any conversations or contact with the members of [the] panel."

Finally, plaintiffs also contend the panel manifestly disregarded the facts and the law. Plaintiffs allege the panel was informed of the law but failed to correctly "implement the law." Plaintiffs essentially argue the panel failed properly to apply Section 7 of the Securities Exchange Act of 1934 and Rule 10b–5, enacted pursuant to the Act. Plaintiffs also cite several securities rules and Oregon statutory provisions, suggesting the panel failed properly to apply them as well.

## II

■ As an initial matter, plaintiff Nordahl Development Corp. seeks a ruling allowing plaintiff Steven R. Olson to represent it. Ninth Circuit precedent, however, prevents this court from permitting Nordahl to appear without representation by an attorney. See *United States v. High Country Broadcasting Co.*, 3 F.3d 1244, 1245 (9th Cir.1993) (per curiam). "A corporation may appear in federal court only through licensed counsel." *Id.* (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993)). Olson may only represent himself individually. Nordahl suggests it should not be bound by the usual rule because the arbitration panel permitted Nordahl to appear without counsel. However, there is no arbitration exception to the rule against a corporation appearing in federal court without representation by licensed counsel.

Thus the court orders Nordahl to obtain counsel.[2] If Nordahl fails to obtain coun-

---

1. Plaintiffs further allege the defendants requested the Portland proceedings (involving Southwest) be heard in Chicago (along with the SSB proceedings). At the time defendants made this request a panel in Portland had already been selected. Plaintiffs therefore resisted moving any proceedings back to Chicago, because doing so would have caused further delay in resolving the dispute.

2. Nordahl does request that the court appoint counsel to act on its behalf. There generally

is not a constitutional right to counsel in civil cases. See, e.g., *Johnson v. Department of Treasury*, 939 F.2d 820, 824 (9th Cir.1991). In fact, a court should appoint counsel in a civil case only in "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.1990). Because (as discussed in this order) the court finds the plaintiffs have not indicated any likelihood of prevailing on the merits and because plaintiff Olson is still able to present the claims on behalf of

sel within 60 days from the date of this order, the court will dismiss Nordahl from this lawsuit. If Nordahl is able to secure counsel, the court will permit it to file new pleadings consistent with the reasoning in this order. The court now turns to the merits of the parties' motions as applied to plaintiff Steven R. Olson ("plaintiff").

## III

Plaintiff has filed both a complaint and an amended motion to vacate. In response, defendants have filed Rule 12(b)(6) motions to dismiss for failure to state a claim.[3]

Granting a dismissal under Rule 12(b)(6) is appropriate only when there either is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). The court must accept the complaint's material allegations as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994).

When a plaintiff has failed to state sufficient facts to support a claim, a court must then decide whether to grant plaintiff another opportunity to state a claim. A court generally should deny leave to amend the complaint only when "the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987). The

policy in favor of allowing amendment is especially compelling when the plaintiff is acting *pro se. Id.;* cf. *Zichko v. State of Idaho*, 247 F.3d 1015, 1020 (9th Cir.2001) (recognizing courts have a duty to treat *pro se* pleadings "liberally").

Federal law establishes a strong policy in favor of arbitration and requires that arbitration agreements "be rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir.1999). Arbitration promotes the "efficient, expeditious, and economical" resolution of disputes. *Skinner v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, No. 03–2625, 2003 WL 23174478, at *6 (N.D.Cal. Dec. 29, 2003) (citing *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1293 (9th Cir.1987)). As a result, Congress made the policy decision to strictly confine federal courts' review of arbitration awards; under the Federal Arbitration Act, a court may vacate an award only when:

(1) the award was procured by corruption, fraud, or undue means;

(2) there was evident partiality or corruption in the arbitrators, or either of them;

(3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the

---

himself, the court declines to appoint counsel for Nordahl.

**3.** As an initial point, the Federal Arbitration Act indicates that filing a "complaint" is not the proper way to initiate proceedings under the Act. The Act provides that any "application to the court [pursuant to the Act] shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. Thus it is not clear that filing a Rule 12(b)(6) motion is an appropriate response to a motion to vacate.

Nevertheless, because the issue does not materially affect the court's reasoning, the court assumes *arguendo* that the parties have proceeded correctly and, therefore, applies the Rule 12(b)(6) analytical framework. On another note, defendants construe plaintiff's complaint and motion to vacate together as a single pleading in arguing plaintiff has failed to state a claim. Keeping in mind plaintiff's *pro se* status, the court accepts defendants' approach and will review both the complaint and amended motion to vacate in determining whether plaintiff has set forth sufficient allegations.

rights of any party have been prejudiced; or

(4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Federal courts, including the Ninth Circuit, have interpreted subsection (4) of the Act as permitting a court to vacate an arbitration award when the arbitrators manifestly disregarded the law. See, e.g., *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 1002–03 (9th Cir.2003) (en banc); *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir.1995). Construing plaintiff's allegations in his favor, his motion to vacate primarily is based on subsections (2) and (4), specifically, on allegations the arbitrators were "evidently partial" and acted in "manifest disregard of the law."

### A

■ "Manifest disregard of the law" means something " 'more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law.' " *Luong v. Circuit City Stores, Inc.*, 356 F.3d 1188, 1195 (9th Cir.2004) (quoting *Michigan Mut. Ins.*, 44 F.3d at 832); see also *American Postal Workers Union AFL–CIO v. United States Postal Serv.*, 682 F.2d 1280, 1285 (9th Cir.1982) ("Federal courts will not undertake plenary review of the merits of an arbitration award."). "Because arbitration is an *alternative* to the judicial resolution of disputes, [an] extremely low standard of review is necessary to prevent the 'judicialization' of the arbitration process." *Sunshine Mining Co.*, 823 F.2d at 1293 (emphasis in original). As a result, in deciding whether to vacate an arbitration decision, a district court will not act as an appellate court and re-visit the merits of a case. Rather, the party alleging a manifest disregard of the law must show the arbitrators "recognized the applicable law and then ignored it." *Michigan Mut. Ins.*, 44 F.3d at 832.

■ "Manifest disregard of the *facts* is not an independent ground for vacatur in [the Ninth] circuit." *Coutee v. Barington Capital Group, LP*, 336 F.3d 1128, 1133 (9th Cir.2003) (emphasis added). As mentioned, the challenging party must show a manifest disregard of the *law*. By basing an argument on a disregard of the facts, a plaintiff can show the necessary disregard of the law only when the facts are "legally dispositive" and "so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." *Id.*; see, e.g., *American Postal Workers*, 682 F.2d at 1284 (holding that arbitrator would manifestly disregard the law if he were to find an employee did not strike, a fact conclusively established by the record and dispositive of the legal issue). Thus "errors with respect to the evidence on which [arbitrators] base[d] their rulings" generally will not support a finding of a manifest disregard of the law. *Kyocera Corp.*, 341 F.3d at 1003.

■ Moreover, arbitrators' rulings on "procedural matters tangential to the main body of the arbitrable dispute" are not an appropriate basis for a vacatur under subsection (4) of the Arbitration Act. *Sheet Metal Workers Int'l Assoc., Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 744 (9th Cir.1985) (Kennedy, J.). "A mere procedural irregularity provides no basis upon which to conclude that the [arbitration panel] acted beyond its authority." *Id.* Indeed, procedural matters are "part of the bundle of issues committed to decision by the arbitrator." *Id.*; see also *Toyota of Berkeley v. Automobile Salesmen's Union, Local # 1095*, 834 F.2d 751, 754 (9th Cir.1987) ("[P]rocedural questions related to substantive issues that are arbitrable under the agreement are for the

arbitrator to decide in the absence of a contrary provision."). In light of the above-mentioned principles, plaintiff does not state sufficient facts showing a manifest disregard of the law.

■ Plaintiff primarily argues that the arbitrators improperly dismissed his claim based on Section 7 of the Securities Exchange Act, which regulates the use of credit in securities transactions. Plaintiff essentially alleged that defendants' accounting, transfer, and posting errors caused defendants to misrepresent plaintiff's available margin, allowing him to complete trades for which he had no available borrowing power. Plaintiff's motion acknowledges that the arbitrators based their decision against plaintiff's Section 7 claim on a federal case which holds that there is no private right of action for claims involving the alleged over-extension of credit.[4] See Plaintiffs' Amended Motion to Vacate at 20. Plaintiff, therefore, affirmatively pleads that the arbitrators considered, and even applied, federal precedent. Such allegations cannot state a claim for the "manifest *disregard* of the law." And to the extent plaintiff argues that the arbitrators erred by failing to distinguish the federal case at issue or to apply other cases suggesting there is a private right of action, his claim of manifest disregard falls far short of the applicable standard. At most, plaintiff complains about "an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Mich. Mut. Ins.*, 44 F.3d at 832.

■ In addition to Section 7, plaintiff also asserted a claim under Rule 10b–5, which, generally speaking, allows investors to recover for losses caused by a defendant's fraud. See generally *Paracor Fin., Inc. v. General Elec. Capital*, 96 F.3d 1151, 1157 (9th Cir.1996) (en banc). Plaintiff also cites in his complaint and amended motion a breach of fiduciary duty theory and a number of state law securities statutes. Plaintiff, however, nowhere alleges in his complaint or motion to vacate that the arbitrators recognized the applicable regulatory and state law principles but *ignored* them. In fact, plaintiff's motion specifically states, "[t]he panel was … informed of the law" through his arbitration pleadings. See Plaintiff's Amended Motion to Vacate at 15–16. Accordingly, plaintiff has not shown a manifest disregard for the law.

Plaintiff, then, is left with arguments based on the arbitrators' alleged disregard of the facts and erroneous procedural rulings, neither of which justifies vacating the arbitration decision.

First, as mentioned, the Ninth Circuit does not recognize "manifest disregard of the facts" as a ground for vacating an arbitration decision. See *Coutee*, 336 F.3d at 1133. Plaintiff's motion to vacate exhaustively delineates facts established in the arbitration proceedings, but it does not allege any facts which the arbitrators ignored and which determinatively establish plaintiff's right to relief. See *id.* (recognizing, "[i]n some circumstances … dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law"). Indeed, given the federal cases which hold there is no private right of action under Section 7, none of the facts listed by plaintiff appear even relevant as to his Section 7 claim. Plaintiff also does not allege any undisputed facts ignored by the arbitrators which necessarily establish the elements of his Rule 10b–5 or state law claims. At bottom, plaintiff's argument improperly

---

4. It appears from the parties' briefing that the federal case referenced by plaintiff is *Bennett v. United States Trust Co.*, 770 F.2d 308, 311– 13 (2d Cir.1985), which followed five other circuit courts in holding there is "no private cause of action … under section 7."

asks the court to reexamine the ultimate weight of the evidence.[5]

■ Plaintiff further argues there are numerous erroneous decisions by the arbitrators showing a manifest disregard for the law. The decisions at issue are procedural in nature. For example, plaintiff complains about the arbitrators' venue decision, applying an arbitration rule which prevents *pro se* parties from obtaining subpoenas, and allowing Southwest's expert witness to be present during the proceedings (while prohibiting plaintiff's witnesses from being present during the proceedings). As an initial matter, plaintiff does not point to any governing "law" which the arbitrators disregarded in making their procedural decisions. Most significant, these decisions were peripheral to the substantive issues implicated by plaintiff's claims and, therefore, within the arbitrators' discretion. See, e.g., *Toyota of Berkeley*, 834 F.2d at 754.

■ Plaintiff also alleges that the arbitrators refused to allow him to amend his complaint, therefore preventing him from presenting certain newly discovered evidence. See Plaintiff's Amended Motion to Vacate at 6–7. Again, arbitrators have wide discretion in making procedural decisions. The Arbitration Act, however, permits vacatur when the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).[6] Nevertheless, a party challenging arbitrators' evidentiary rulings must also make "a showing of prejudice." *Employers Ins. of Wausau v. Nat'l Union*

*Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490 (9th Cir.1991); see also *Hoteles Condado Beach v. Union de Tronquistas, Local 901*, 763 F.2d 34, 40 (1st Cir.1985). The arbitration panel "is the judge of the admissibility and relevancy of evidence"; the evidence need only be sufficient to enable the arbitrators to make an informed decision. *Hoteles Condado*, 763 F.2d at 39; accord *Skinner*, 2003 WL 23174478, at *5.

In complaining about the arbitrators' refusal to hear the newly discovered evidence, plaintiff insufficiently alleges prejudice. It appears that the evidence at issue pertained to a faulty computer owned by Southwest and which may have caused plaintiff's account information to be erroneously stated. Plaintiff, however, does not explain how such evidence would have changed the arbitrators' reasoning. As mentioned, the arbitrators apparently concluded that there is no private right of action under Section 7; accordingly, the proffered evidence was irrelevant. In addition, plaintiff does not allege the evidence was of such a nature it would have changed the arbitrators' decisions regarding his other claims. In sum plaintiff's allegations are insufficient to justify vacatur on evidentiary grounds. See *Skinner*, 2003 WL 23174478, at *6 (" 'Absent exceptional circumstances, . . . a reviewing court may not overturn an arbitration award based on the arbitrator's determination of the relevancy or persuasiveness of the evidence submitted by the parties.' " (quoting *Hoteles Condado*, 763 F.2d at 39)).

---

**5.** The court, however, notes that it is troubled by plaintiff's allegation that the arbitrators failed to issue orders "accurately representing the findings, decisions and stipulations made at pre-hearing conferences." Plaintiff's Amended Motion to Vacate at 8. Plaintiff though does not explain the alleged discrepancies. Nor does plaintiff indicate that the alleged inaccurate orders caused the arbitrators to disregard facts which are legally dispositive as to any of his claims.

**6.** Plaintiff's motion does not expressly rely on subsection (a)(3). However, especially given his *pro se* status, the court construes his allegations as sufficiently implicating subsection (a)(3).

Based on the foregoing reasons, plaintiff has failed to state sufficient allegations to support a finding of a manifest disregard of the law. Nor has plaintiff otherwise sufficiently alleged facts justifying vacatur under subsections (3) and (4) of the Arbitration Act. The central remaining issue is whether he has sufficiently alleged "evident partiality" within the meaning of subsection (2).

**B**

■ The Ninth Circuit has identified two categories of evident partiality cases: non-disclosure cases and actual bias cases. *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir.1996). Non-disclosure cases are somewhat easier to prove. In a non-disclosure case, "[a] reasonable impression of bias sufficiently establishes evident partiality because the integrity of the process by which arbitrators are chosen is at issue in nondisclosure cases." *Id.* at 427; see also *Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir.1994). Thus courts may be justified in vacating an award when an arbitrator failed to disclose a prior relationship with a party to the arbitration or a stake in the arbitration's outcome. See, e.g., *Toyota of Berkeley*, 834 F.2d at 756 (citing non-disclosure situations justifying vacatur, including those involving "an arbitrator's ruling on a grievance that directly concerned his own lucrative employment, a family relationship that made the arbitrator's impartiality suspect, the arbitrator's former employment by one of the parties, and the arbitrator's employment by a firm represented by one of the parties' law firms" (citations omitted)).

In contrast to non-disclosure cases, actual bias cases do not implicate the integrity of the arbitrator-selection process. See *Woods*, 78 F.3d at 427–28. The Ninth Circuit, therefore, has reasoned that when a party is not complaining about a failure to disclose certain information, the party must show the arbitrators actually were biased against the complaining party. *Id.* In which case, evidence giving rise to "the appearance of impropriety" is not sufficient to establish evident partiality. *Id.* at 427; see also *Toyota of Berkeley*, 834 F.2d at 755 (noting that "the appearance of impropriety, standing alone, is insufficient to establish [actual] bias"); *Kinney Air Conditioning*, 756 F.2d at 746 (same). Stated slightly differently, allegations supporting a "reasonable impression of partiality" are insufficient to " 'imply ... a finding of actual bias.' " *Woods*, 78 F.3d at 427 (quoting *Schmitz*, 20 F.3d at 1047); see also *Schmitz*, 20 F.3d at 1047 ("That a reasonable impression of partiality is present does not mean the arbitration award was the product of impropriety.").

■ Accordingly, a party seeking to establish evident partiality through a showing of actual bias must set forth "specific facts" indicating improper motives, aside from those facts merely showing a " 'reasonable impression' of partiality." *Woods*, 78 F.3d at 427–28; see also *Lucile Packard Children's Hosp. v. U.S. Nursing Corp.*, No. 02–0192, 2002 WL 1162390, at *6 (N.D.Cal. May 29, 2002) ("Vacatur of an arbitration award for 'evident partiality' is appropriate where 'the possibility of bias [is] direct, definite and capable of demonstration rather than remote, uncertain and speculative.' " (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir.1982))).

■ Plaintiff does not allege that an arbitrator failed to disclose any relevant relationship with either defendant before the arbitration began. Nor does he assert that an arbitrator failed to disclose any conflict of interest such as having a stake in the arbitration's outcome. Instead plaintiff's allegations essentially attack the integrity of the arbitration decision itself. Therefore the stricter standard governing actual bias cases applies to plaintiff's claim

of partiality. See *Woods,* 78 F.3d at 428. Plaintiff has failed to allege sufficient facts to support a claim under that standard.

At the outset, plaintiff relies heavily on the arbitrators' alleged failure properly to execute impartiality oaths, as required by the arbitration panel's rules of procedure. According to plaintiff, two of the arbitrators executed oaths as to Southwest but failed to do so when SSB became a party after consolidation of the two arbitration proceedings. Plaintiff further argues that there is no record that one of the arbitrators took an oath at any time. Plaintiff's allegations regarding failures in oath execution are insufficient to show actual bias. Absent any allegation the arbitrators had a relationship with defendants or otherwise stood to gain from a decision in favor of defendants, plaintiff's allegations amount to merely a technical objection and do not show the arbitrators "were predisposed to favor [defendants]." *Woods,* 78 F.3d at 428–29 (holding plaintiff did not make an actual bias case, because the allegations of "attenuated pecuniary" relationship between the arbitrator and one of the parties were insufficient to show arbitrators were "predisposed to favor" other party). In sum, plaintiff's alleging a failure to execute an oath, but without alleging anything further suggesting a motive to decide against defendants, shows at most an "appearance of impropriety." See *Schmitz,* 20 F.3d at 1047 (reasoning "[t]he appearance of impropriety" is insufficient to show partiality in actual bias case). "Any possibility of bias capable of being inferred from [that allegation] is simply too 'remote, uncertain, and speculative.'" *Lucile Packard Children's Hosp.,* 2002 WL 1162390, at *6 (citation omitted).

■ Plaintiff also cites a number of other procedural decisions by the arbitrators to support his claim of evident partiality. As mentioned, plaintiff complains about the arbitrators' decisions regarding venue, plaintiff's attempt to amend his complaint, the issuance of subpoenas, and the presence of witnesses at the proceedings. Plaintiff further complains about the arbitrators' delaying the arbitration for over a year to accommodate SSB's inhouse attorney, failure to tell plaintiff before opening statements about the evidentiary rules, and delay in ruling on a motion to amend filed by Southwest. Even taken together, the arbitrators' various decisions do not show an actual bias against plaintiff. In almost any adversarial proceeding either side can list a number of tangential rulings decided against it. As a result, "[e]ven repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation." *Kinney Air Conditioning Co.,* 756 F.2d at 746. Plaintiff, therefore, cannot rest his allegations of improper motive on his list of procedural rulings.

■ However, plaintiff also alleges that Southwest did not submit a properly executed submission agreement. Plaintiff does not elaborate. His allegations do not explain how Southwest's alleged error reflects the existence of improper motives on the part of the arbitrators. Nor does plaintiff allege that Southwest's improperly executed submission caused the arbitrators to decide any issues which were beyond the scope of the arbitrators' authority. See *Michigan Mut. Ins. Co.,* 44 F.3d at 830 ("When arbitrators rule on a matter not submitted to them, or act outside the scope of the parties' contractual agreement, the award may be overturned because the arbitrators exceeded the scope of their authority.").

Plaintiff also attributes allegedly improper conduct to SSB, asserting that its attorney made certain false statements to the arbitrators. See Plaintiff's Amended Motion to Vacate at 25. Similarly, plaintiff baldly asserts that an SSB employee and witness committed perjury. *Id.* Plaintiff

does not allude to how alleged misconduct on the part of SSB's counsel and witness translates into evident partiality on the part of the arbitrators. See 9 U.S.C. § 10 (permitting vacatur when there was "evident partiality or corruption *in the arbitrators or either of them* " (emphasis added)).

In addition, plaintiff does not allege facts sufficient to indicate that SSB's alleged falsehoods "procured" the arbitrators' award. See 9 U.S.C. § 10(a)(1) (allowing vacatur when "the award was *procured by corruption, fraud, or undue means*" (emphasis added)). In fact, what little detail plaintiff's amended motion gives about the alleged falsehoods (see Amended Motion to Vacate at 25) suggests that they had no bearing on the arbitrators' ultimate decision and thus would not justify vacatur. "[Fraud] will not justify the vacation of an award if it concerns an issue remote from the question to be decided." *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 600 (3d Cir.1968). Instead, to obtain vacatur of an arbitration decision due to fraud, the challenging party must show that the alleged fraud caused the arbitrators' decision. See, e.g., *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (per curiam). The challenging party must further show that the fraud was not discoverable by due diligence before or during the proceeding. *Id.* at 1404. Thus, even assuming plaintiff's allegations can be read to implicate subsection (a)(1), the allegations are insufficient to meet that subsection's strict requirements. Cf. *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.1982)("[I]n order to protect

the finality of arbitration decisions, courts must be slow to vacate an arbitral award on the ground of fraud.").

In deciding whether plaintiff has stated sufficient allegations of evident partiality, however, one of plaintiff's allegations causes the court some pause. Plaintiff alleges that the arbitration panel's chairwoman engaged in an extended private conversation with one of SSB's attorneys after the hearing but before a decision was issued, therefore violating the arbitrators' hearing procedures. But without more information about the nature of the conversation or additional allegations—such as those suggesting the chairwoman had an existing conflict of interest—plaintiff's allegation of the single conversation gives rise to at most the "appearance of impropriety." And under established Ninth Circuit precedent, the "appearance of impropriety" is insufficient to show actual bias. See, e.g., *Woods*, 78 F.3d at 427.[7]

In sum, plaintiff has failed to allege " 'specific facts which indicate improper motives.' " *Woods*, 78 F.3d at 427 (quoting *Kinney Air Conditioning Co.*, 756 F.2d at 746). That is, plaintiff has not stated allegations sufficient to show that the arbitrators were "predisposed to favor" defendants. *Woods*, 78 F.3d at 429. As a result, plaintiff's amended motion to vacate must be denied, and defendants' motions to dismiss for failure to state a claim are granted.

## IV

In addition to moving for failure to state a claim, defendant SSB also moved for lack of subject matter jurisdiction. Although (as held above) plaintiff has failed

7. With its Rule 12(b)(6) motion to dismiss, defendant SSB submitted an affidavit from its attorney rebutting plaintiff's allegation regarding the private conversation. The court, however, need not consider the affidavit at this time. Cf. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998) (limiting courts'

12(b)(6) review to the complaint and documents upon which the complaint relies). Should plaintiff amend his motion to vacate in such a way as to state a cognizable claim and again raise the alleged conversation, defendant can then file any affidavits in response.

to allege sufficient facts justifying vacatur, the court nevertheless will consider SSB's jurisdictional objection. If there is no jurisdiction, the court cannot give plaintiff a second opportunity to state a claim.

SSB bases its jurisdictional argument on the allegation plaintiff failed to file his pleadings in a timely fashion. Section 12 of the Arbitration Act governs the timing of attempts to vacate arbitration awards:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.... If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court....

9 U.S.C. § 12.

SSB's argument rests on the premise plaintiff did not properly serve his notice within three months of receiving the award. See SSB's Memorandum in Support of Motion to Dismiss at 3 ("Section 12 of the FAA required plaintiffs to serve their motion to vacate upon SSB within three months after *receiving* the award." (emphasis added)). Section 12's three-month limitations period runs from the date the award was "filed or *delivered*." 9 U.S.C. § 12 (emphasis added). "Delivered" is not defined by the Act; SSB's

interpretation of that term as "receipt," however, comports with ordinary meaning. See, e.g., *Sargent v. Paine, Webber, Jackson & Curtis, Inc.*, 882 F.2d 529, 531 (D.C.Cir.1989) (calculating Section 12's three-month period from the date of "receipt" of the arbitration award); *Possehl, Inc. v. Shanghai Hia Xing Shipping*, No. 00 CIV.5157, 2001 WL 214234, at *3 (S.D.N.Y. March 1, 2001) ("'Delivery' means receipt of the award.").

Defendant contends that plaintiff received the award on the same day it was issued, July 3, 2003. On that date the arbitrators allegedly sent the award to plaintiff via facsimile. Defendant argues that plaintiff did not effect proper service on SSB until October 3, 2003, more than three months after receipt of the award.

Plaintiff, however, responds that he made it clear to the parties and arbitrators that the facsimile number at issue was not to be used for purposes of service. In fact, according to plaintiff, defendant Southwest's attorney had expressly complained to the arbitrators about plaintiff's refusal to accept incoming facsimiles. SSB does not rebut plaintiff's allegations; accordingly, keeping in mind plaintiff's *pro se* status, the court accepts them as true. Under these circumstances, the arbitration award was not "delivered" on July 3, 2003, and thus the court rejects SSB's argument under Section 12 of the Arbitration Act.[8]

---

8. Accordingly, the court need not at this time resolve at least two additional issues which defendant's argument implicates:

First, SSB seems to argue that service for purposes of Section 12 means service of the actual "complaint," along with a summons. It does not cite any case law which requires service of a complaint and summons; Section 12, in fact, requires service only of "[n]otice of a motion to vacate" or, as phrased later in the Section, "notice of the application [to vacate]." 9 U.S.C. § 12. It is undisputed that plaintiff served SSB with a "complaint" (but without a summons) on September 12,

2003, thus giving SSB notice of plaintiff's intention to seek to vacate the award.

Second, some courts have interpreted Section 12—which incorporates the service procedures of Rule 4 of the Federal Rules of Civil Procedure—as establishing a flexible standard. See, e.g., *InterCarbon Bermuda, Ltd. v. Caltex Trading & Transport Corp.*, 146 F.R.D. 64, 69 (S.D.N.Y.1993) ("Defects in service of process may nevertheless be excused where considerations of fairness so require, at least in cases that arise pursuant to arbitration proceedings."); *Escobar v. Shearson Lehman Hutton, Inc.*, 762 F.Supp. 461, 463 (D.P.R.

## V

For the reasons discussed above, the court grants SSB's motion to dismiss (Doc. # 13) and Southwest's motion to dismiss (Doc. # 11). In addition, the court denies plaintiff's amended motion to vacate (Doc. # 9).

But the court will give plaintiff 60 days from the date of this order in which he may file an amended motion. The court emphasizes, however, that plaintiff should file an amended motion only if he can, in good faith, add substantive changes. As made clear in this order, the court will not simply second guess the arbitrators or re-weigh the evidence.

The court further declines to appoint counsel for plaintiff Nordahl Development Corp. Nordahl has 60 days from the date of this order to notify the court it has found counsel; if it finds counsel, the court will allow Nordahl to file new papers consistent with this order.

IT IS SO ORDERED.

1991) (upholding service even though it did not comply with Section 12's technical service-by-marshal requirement, because Section 12 is "designed to ensure that a defendant is properly notified"). As mentioned, in this case, the court need not decide whether technical errors in service may be forgiven.