Frederic W. SCHWARTZ, Jr.,
and Cadeaux & Taglieri,
P.C., Appellants

v.

Richard CHOW, Appellee.

No. 01–CV–133.

District of Columbia Court of Appeals.

Argued Feb. 12, 2002.

Decided Feb. 3, 2005.

---

Frederic W. Schwartz, Jr., for appellants.

Martin F. McMahon, Washington, DC, for appellee.

Before TERRY, REID, and WASHINGTON, Associate Judges.

PER CURIAM.

Appellants seek to vacate a decision of the Attorney–Client Arbitration Board ("the Board"),[1] awarding them $26,000 in fees and $2,230 in expenses for their representation of appellee Richard Chow in litigation arising out of an automobile accident and in seven other unrelated matters. Appellants maintain that the Board exceeded its authority by retroactively applying a rule not in effect at the time they entered into their retainer agreement with Mr. Chow, with the result that they were not awarded their full fee. We agree that the basis for the Board's award is unclear, but for that very reason we reject appellants' argument. Because the law is well

established that an arbitrator is not required to provide an explanation for a ruling, and because appellants have presented no other valid ground for relief, we decline to remand the case and thus affirm the trial court's decision upholding the award.

I

On May 28, 1982, Mr. Chow, then named Rong Yao Zhou, and his wife, Xiu Juan Wu, were involved in a serious automobile accident. Mr. Chow settled with the driver of the other car for $220,000, but filed suit against the owner of a restaurant who had served alcohol to the driver shortly before the accident occurred. *See Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1269 (D.C.1987) (*"Zhou I"*); *Zhou v. Jennifer Mall Restaurant, Inc.*, 699 A.2d 348, 350 (D.C.1997) (*"Zhou II"*). Although the case was originally dismissed by the trial court, Mr. Chow won reinstatement of his complaint on appeal. *Zhou I*, 534 A.2d at 1276. After a long litigation process, including another appeal, Mr. Chow obtained a judgment for $200,000 in 1997.[2] *Zhou II*, 699 A.2d at 350. Mr. Chow is now divorced from his wife, and, under their divorce agreement, he is entitled to half of the judgment.[3]

Throughout the litigation, Mr. Chow was represented by the law firm of Cadeaux & Taglieri, P.C. The law firm, in turn, engaged the services of Frederic Schwartz, Esquire, to assist in presenting both of Mr. Chow's appeals. The law firm and Mr. Schwartz agreed to divide the fee

---

1. The Board is a subdivision of the District of Columbia Bar.

2. The $200,000 resulted in a total recovery of $520,000 for the accident. In addition to the $220,000 settlement with the driver, the restaurant's insurance company had agreed to pay $100,000 of its $300,000 coverage after Mr. Chow won the first appeal. The $200,000 judgment in 1997 was the resolu-

tion of a dispute about whether the insurer was required to pay the remaining $200,000 in light of Mr. Chow's settlement with the driver. *See Zhou II*, 699 A.2d at 350.

3. According to appellants, Mr. Chow's ex-wife has agreed to pay her half of the attorneys' fee, which amounts to $50,000.

from the case evenly. In this proceeding appellants claim $50,000 in legal fees from the 1997 judgment, based on a retainer agreement between Mr. Chow and Cadeaux & Taglieri that was signed shortly after the accident occurred. The agreement [4] states that the firm is entitled to:

a sum equal to 33⅓ percent of any amount recovered or collected for or by [Chow], through or by compromise, settlement or otherwise before this suit is filed; in the event that the suit is filed, the sum shall be equal to 40 percent of any recovery; and in the event that it is necessary to prosecute an appeal, the sum shall be equal to 50 percent of any recovery.

Because the matter was not finally decided until the second appeal (*Zhou II*), appellants claimed they were entitled to a 50 percent fee on Mr. Chow's half of the $200,000 recovery, as well as $2,230 in costs.[5]

4. The copy of the agreement that is in the record on appeal contains uncompleted blank lines and is undated.

5. Notwithstanding the agreement, the law firm charged only $40,000, or 18 percent, on the initial $220,000 settlement, and $37,960 (38 percent) on the initial $100,000 distribution from the restaurant's insurance company.

6. Mr. Chow speculated that his brother signed his name while he was in a coma. The record contains a report from a handwriting analyst that lends support to this contention.

7. Rule XIII provides that an attorney who is a member of the District of Columbia Bar

shall be deemed to have agreed to arbitrate disputes over fees for legal services and disbursements related thereto when such arbitration is requested by a present or former client ... if a substantial portion of the services were performed by the attorney in the District of Columbia, or if the services included representation before a District of Columbia court .... The arbitration provided under this rule shall be final and binding on the parties according to applicable law,

Mr. Chow denied signing the retainer agreement [6] and filed for arbitration pursuant to Rule XIII of the District of Columbia Bar Rules.[7] Appellants counterclaimed for $8,219 in fees relating to seven other matters on which they had done work for Mr. Chow, including a "domestic action" relating to his divorce in which they sought fees of $900.[8] The Board awarded appellants $26,000 in fees and $2,230 in expenses, but did not explain the reasons underlying its award.[9]

Appellants filed a motion in the Superior Court to vacate the award, asserting that the rationale of the award was apparent and that the Board exceeded its authority by retroactively applying rules that were not in effect at the time the retainer agreement was signed. The court found, however, that the rationale of the award was not apparent and therefore confirmed the award. This appeal followed.

and shall be enforceable in the Superior Court and in any other court having jurisdiction.

Unless the parties agree otherwise, the arbitration is conducted by the Attorney–Client Arbitration Board.

8. Mr. Chow signed a separate retainer agreement which provided that fees for the domestic action would be paid out of the proceeds recovered from the accident. The record contains no written agreement for the six other matters, which were business and landlord-tenant cases, but appellants assert, without contradiction, that the parties agreed that the fees in those matters were also to be paid from the proceeds in the accident-related lawsuit.

9. The Board's order stated: "Petitioner shall pay respondents $26,000 in fees and $2,230 in expenses out of the $100,000 in insurance proceeds to which he is entitled. This award makes no determination with respect to any claim to insurance proceeds Mr. Chow's ex-wife may have, or with respect to the distribution of any potential interest on the insurance proceeds."

## II

■ It is firmly established that "[j]udicial review of an arbitrator's decision is extremely limited, and a party seeking to set it aside has a heavy burden." *Lopata v. Coyne*, 735 A.2d 931, 940 (D.C.1999) (citations omitted); *accord, e.g., Tauber v. Trammell Crow Real Estate Services, Inc.*, 738 A.2d 1214, 1216–1217 (D.C.1999). D.C.Code § 16–4311(a) (2001) sets forth the grounds on which a court is authorized to vacate an arbitration award.[10] In addition to those statutory grounds, we have also said that "[w]here it appears that the arbitrator manifestly disregarded the law, court inquiry may be undertaken." *Lopata*, 735 A.2d at 940 (citations omitted). The nature and extent of that inquiry may be limited, however, "particularly if the decision does not approach being arbitrary and capricious." *Id.* (footnote omitted).

■ Arbitrators, moreover, are not required to state the grounds for their decisions. *Poire v. Kaplan*, 491 A.2d 529, 534 (D.C.1985); *see Sargent v. Paine Webber Jackson & Curtis, Inc.*, 280 U.S.App. D.C. 7, 10, 882 F.2d 529, 532 (1989), *cert. denied*, 494 U.S. 1028, 110 S.Ct. 1474, 108 L.Ed.2d 612 (1990); *Sobel v. Hertz, War-*

*ner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972) ("a requirement that arbitrators explain their reasoning in every case … would undermine the very purpose of arbitration, which is to provide a relatively quick, efficient and informal means of private dispute settlement"). Therefore, unless manifest disregard of the law is clear, "courts will not look beyond the lump sum award in an attempt to analyze the reasoning process of the arbitrators." *Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739, 740 (2d Cir.1978) (citation omitted); *see Kanuth v. Prescott, Ball & Turben, Inc.*, 292 U.S.App. D.C. 319, 323, 949 F.2d 1175, 1179 (1991).

■ Although the arbitration panel in this case gave no explanation for its decision, appellants contend that "the rationale of the Board is apparent." According to appellants' interpretation, the Board awarded fees only for the work of Cadeaux & Taglieri—and not Mr. Schwartz—because the retainer agreement did not provide written notice of Mr. Schwartz's participation in representing Mr. Chow, as is required by the current Rule 1.5(e)(2) of the District of Columbia Rules of Professional Conduct.[11] As a result, appellants

---

10. D.C.Code § 16–4311(a) states:
    Upon application of a party, the Court shall vacate an award where:
    (1) The award was procured by corruption, fraud or other undue means;
    (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
    (3) The arbitrators exceeded their powers;
    (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 16–4315, as to prejudice substantially the rights of a party; or
    (5) There was no arbitration agreement and the issue was not adversely determined

in proceedings under section 16–4312 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a Court of law or equity is not ground for vacating or refusing to confirm the award.

11. Rule 1.5(e) provides:
    (e) A division of a fee between lawyers who are not in the same firm may be made only if:
    (1) The division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
    (2) The client is advised, in writing, of the identity of the lawyers who will participate in the representation, of the contemplated division of responsibility, and of the

contend, the Board's award reflects $25,000 for the one-half of the work performed under the retainer agreement by Cadeaux & Taglieri, $900 for the divorce case because it was the only other claim for which there was an additional valid retainer agreement, and a "de minimis" extra $100.[12]

Under this rationale, appellants argue, the Board's decision was in error. The current District of Columbia Rules of Professional Conduct, including Rule 1.5(e), became effective on January 1, 1991, after Mr. Chow had entered into the retainer agreement. *See* DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT, Preface (1996). Disciplinary Rule (DR) 2–107, which was the precursor of Rule 1.5 and was in effect at the time the retainer agreement was signed, did not require written notice of a fee-sharing agreement, as long as full disclosure was made and the client consented. *See* DISTRICT OF COLUMBIA CODE of PROFESSIONAL RESPONSIBILITY, DR 2–107(A) (1983).[13] Appellants contend

that Mr. Schwartz's representation and fee sharing agreement were legitimate under the prior rules and that the Board thus exceeded its powers by not awarding them the full fee due under the retainer agreement.

Although appellants offer a possible explanation for the Board's award, that explanation is really nothing more than a good guess. Appellants' rationale itself, although suggesting a precise and detailed reason for the award, fails to account for $100 of it. This failure undermines their assertion that their theory is the only one that explains the award. More importantly, as the trial court pointed out, appellants' explanation overlooks "a host of variables that just as plausibly explain a fee award which was, after all, made in a lump sum to two claimants in eight cases."

■ Mr. Chow offers several alternative rationales for the award.[14] Although all of these explanations are plausible to one de-

---

effect of the association of lawyers outside the firm on the fee to be charged;
(3) The client consents to the arrangement; and
(4) The total fee is reasonable.

**12.** Appellants contend that no other rationale can explain the amount of the award. They argue that if the Board had accepted Mr. Chow's allegation that he did not sign the retainer agreement, the award should have been only the $900 payable under the divorce retainer. Further, if the court had used a lodestar method, appellants claim they would have been entitled to at least $262,500, significantly more than the $26,000 which the Board awarded.

**13.** Former DR 2–107(A) provided:
A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.
(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

**14.** Mr. Chow argues that there are at least four other plausible explanations for the Board's award: first, that the Board was aiming to give appellants an overall contingency fee of 30 percent for the entire litigation; second, that the Board was awarding a 38 percent contingency fee, based on the entire fee gained from both Mr. Chow and his ex-wife for the $200,000 payment; third, that the Board performed a lodestar calculation in which it discounted the fee because of the allegedly forged retainer agreement and prior payments; and finally, that the Board calculated its award on a *quantum meruit* basis or on a discounted basis, again because of the allegedly forged retainer agreement.

gree or another,[15] none of them compels the conclusion that it was *the* basis for the Board's award. (On the other hand, neither does the one offered by appellants.) At least two of Mr. Chow's rationales provide a possible basis. Contrary to appellants' assertion, *supra* note 12, the Board was not prohibited from awarding a fee for the personal injury litigation if it found that Mr. Chow had not signed the contingency agreement. Instead, it could have awarded a fee based on the lodestar method. *See Ginberg v. Tauber*, 678 A.2d 543, 551–552 (D.C.1996), *cert. denied*, 519 U.S. 1077, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997). Alternatively, the Board could have based its award on a *quantum meruit* theory in the absence of a valid fee contract. Borrowing from the reasoning of the trial court, Mr. Chow now asserts:

> The Board may … have accepted Mr. Chow's contention that he signed no retainer agreement with Cadeaux & Taglieri, but it may also have determined that respondent knew of petitioners' fee-sharing agreement. The Board may have then calculated its award on, say, a *quantum meruit* basis or a discounted basis, and arrived at an award which embraced all legal services undertaken for respondent by petitioners.

We agree with Mr. Chow and the trial court that this analysis provides an acceptable alternative explanation for the Board's award. This means that there are at least two competing rationales which explain the award, and neither the trial court nor this court may speculate as to which of the two the Board actually adopted. "[S]o long as the record disclose[s] a permissible route to the [Board's] stated conclusion," there is "no need of further proceedings." *Sargent*, 280 U.S.App. D.C. at 10, 882 F.2d at 533; *see Sobel*, 469 F.2d at 1215. Nor is there any acceptable reason to remand the case to the Board for an explanation of its decision. Appellants have failed to establish "the probability of 'manifest disregard' of the law," *Sargent*, 280 U.S.App. D.C. at 11, 882 F.2d at 534, and thus, as the trial court recognized, no further inquiry into the basis for the Board's decision can be allowed.

Reduced to essentials, appellants' challenge to the Board's award is founded entirely on speculation and conjecture. Given the "very limited" scope of review by a court of any arbitration award and the "heavy burden" on anyone who challenges it, *Lopata*, 735 A.2d at 940, we have no basis for concluding that the Board exceeded its powers or manifestly disregarded the law. The decision of the trial court confirming the award is therefore

*Affirmed.*

---

**15.** Mr. Chow's first two alternative explanations are the least plausible. Both include an assumed $50,000 fee from his former wife, but the Board's order plainly stated that the award "makes no determination with respect to any claim to insurance proceeds Mr. Chow's ex-wife may have …."